706 So.2d 498 (1997)
Marcia Thomas PENDLETON, Plaintiffs-Appellees,
v.
Robert L. BARRETT, et al., Defendants-Appellant.
No. 97-570.
Court of Appeal of Louisiana, Third Circuit.
December 23, 1997.
*499 Troy E. Bain, Shreveport, for Marcia Thomas Pendleton.
Jack O. Brittain, Natchitoches, Milo Addison Nickel, Jr., Lake Charles, for La. Patients Compensation Fund.
Before YELVERTON, PETERS and PICKETT, JJ.
PICKETT, Judge.
Defendant, Louisiana Patient's Compensation Fund (LPCF), appeals a judgment of the trial court granting summary judgment in favor of the plaintiffs, D. William Pendleton and Lindsey Renee Pendleton. For the reasons set out below, we affirm.

FACTS
This matter arises from a medical malpractice petition originally filed in May of 1980. The facts of this case and the prior procedural history are succinctly set forth in Pendleton v. Barrett, 95-2066 (La. 5/31/96), 675 So.2d 720. For the sake of brevity, we will only set forth the facts as they occurred subsequent to the supreme court decision.
Following the supreme court's decision, a hearing to determine the original harm suffered by Marcia Thomas Pendleton resulting from the admitted liability of Dr. Robert Barrett was held before the trial court on January 6, 1997. At this hearing, the trial court found that Mrs. Pendleton's death was an original harm caused by the malpractice of Dr. Barrett. Also, a motion for summary judgment filed in 1994 was argued and taken *500 under advisement at the hearing. Subsequent to the hearing, LPCF filed a notice of intention to apply for supervisory writ of review along with a motion for stay of proceedings and for the setting of time for filing an application for supervisory writ of review. The trial court took no action on the pleadings. On January 13, 1997, the trial court granted summary judgment in favor of D. William Pendleton in the amount of $240,000.00 with legal interest thereon from May 30, 1980, until paid, plus legal interest on $60,000.00 from May 30, 1980 until April 1, 1991. The trial court further granted summary judgment in favor of Lindsay Renee Pendleton in the amount of $160,000.00 with legal interest thereon from May 30, 1980, until paid, plus legal interest on $40,000.00 from May 30, 1980 until April 1, 1991. LPCF was cast with all costs of the proceedings. Thereafter, the trial court denied LPCF's writ application on the ground the issue presented for review was rendered moot by the summary judgment. LPCF now appeals the trial court's granting of summary judgment.

OPINION

ASSIGNMENT OF ERROR NUMBER ONE
In its first assignment of error, LPCF argues that the trial court erred in finding that the scope of the original harm in this case included Mrs. Pendleton's death. LPCF asserts that the trial court erred in this ruling because: (1) it has never been alleged or proven that Mrs. Pendleton's death was caused by the negligence of Dr. Barrett; (2) all the experts who were deposed and/or testified at the prior partial trial, agreed that the cancer had already metastasized to Mrs. Pendleton's bone by the time she saw Dr. Barett in June of 1979, and her death was certain; and (3) the plaintiffs failed to prove that Mrs. Pendleton's death constitutes original harm. We find these assertions to be without merit.

INSUFFICIENT ALLEGATIONS AND PROOF
The law is well settled that it is not necessary to plead the theory of a case in a petition. La.Code Civ.P. art. 862; Kizer v. Lilly, 471 So.2d 716 (La.1985); Perkins v. Scaffolding Rental & Erection, 568 So.2d 549 (La.1990). As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence. First South Prod. Cr. v. Georgia-Pacific, 585 So.2d 545 (La.1991). In the case at hand, after reviewing Mrs. Pendleton's original petition along with Mr. Pendleton's first supplemental and amended petition, we find sufficient allegations to support the theory that Dr. Barrett's malpractice caused the death of Mrs. Pendleton.
Also, after careful review, we find that the record does support the trial court's finding that Mrs. Pendleton's death was original harm. The trial court had the advantage of hearing three days of testimony prior to Dr. Barrett's settlement of $100,000.00. The trial court also had the advantages of holding pretrial conferences, hearing opening statements, and hearing the testimony of numerous doctors. Thus, we find the trial court was in the best position to make a determination of original harm, and we will not reverse the ruling absent manifest error. Furthermore, LPCF argued at the hearing that Dr. Barrett admitted to depriving Mrs. Pendleton of a chance of recovery. In essence, their argument was he deprived her of a chance to live. Therefore, even though we agree that Mrs. Pendleton may have died regardless of Dr. Barrett's malpractice, we find no abuse of the trial court's discretion in finding that Mrs. Pendleton's death was caused by Dr. Barrett.

EXPERT TESTIMONY
After weighing and evaluating medical testimony, the trial court may accept or reject the opinion expressed by the medical expert. The trial judge should evaluate the expert testimony by the same rules which are applicable to other witnesses, and the trial court is not bound by expert testimony. Lloyd v. TG & Y Stores Company, 556 So.2d 629 (La.App. 2 Cir.1990). Expert opinion as to ultimate facts, even if uncontradicted, is not binding on the trial court. Naquin v. Hile, 536 So.2d 676 (La.App. 3 Cir.1988). *501 The effect and weight to be given expert testimony is within the broad discretion of the trial judge. Bolton v. Louisiana State University Medical Center, 601 So.2d 677 (La.App. 2 Cir.1992).
In the instant case, we must assume the trial court chose to accept the testimony of the plaintiffs' expert, Dr. Joseph Bussey, over the testimony and/or depositions of the medical experts presented on behalf of the defense. Although the record shows that Dr. Bussey's testimony was contradicted, it is within the trial court's broad discretion to accept his opinions and we cannot say the trial court was manifestly wrong.

BURDEN OF PROOF
In Pendleton v. Barrett, 95-2066 (La.5/31/96), 675 So.2d 720, 730, our supreme court stated:
... that liability under La.R.S. 40:1299.44(C)(5) is admitted and established as to damages emanating from the original apparent consequences or harm from the medical malpractice. Original or primary harm is such risk and consequential damages that are encompassed by the health care provider's duty not to commit medical malpractice, and which directly result from the health care provider's breach of duty or medical malpractice. Secondary harm is all other damages which plaintiff alleges were caused by the medical malpractice.... We hold today that when a health care provider admits and establishes liability by payment of $100,000.00 under the Medical Malpractice Act, under La.R.S. 40:1299.44(C)(5), claimant is relieved of the obligation to prove a causal connection between the admitted malpractice and claimant's original and primary harm. However, if claimant is asserting claims for secondary damages, then he has the burden ... to prove that this secondary harm was caused by the medical negligence.
It is the duty of the district judge once he has approved the settlement to distinguish between the original or apparent harm which the admission of liability encompasses and the secondary harm concerning which the plaintiff continues to bear the burden of proof. This determination shall be made by a close review of the record consisting of the pleadings, discovery and any trial proceedings.... Drawing a line between the two is a chore to be performed by the trial judge.
Thus, it is clear from the supreme court's decision in Pendleton that the plaintiffs do not bear the burden of proving any causal connection between Dr. Barrett's admitted malpractice and any original harm. The duty to distinguish between original harm and secondary harm is clearly placed with the trial court. Once a determination of original harm has been made by the trial court, the plaintiffs bear the burden of proving the consequential damages. Therefore, LPCF's assertion that the plaintiffs had the burden of proving that Mrs. Pendleton's death constituted original harm is without merit.
Subsequent to oral argument on this matter, LPCF submitted the Louisiana Supreme Court's decision in Graham v. Willis-Knighton Medical Center, et al, 97-0188 (La. 9/9/97), 699 So.2d 365 for our consideration. LPCF contends that this case is directly relevant to the instant matter.
The Graham case is a medical malpractice action arising from the treatment of a gunshot wound. The plaintiff suffered a gunshot injury to the abdomen and was transported to Willis-Knighton Medical Center. Plaintiff was treated by Dr. Forrest Wright. After examining the plaintiff, Dr. Wright determined that the bullet lacerated the plaintiff's small intestine and his right external iliac artery. Dr. Wright clamped the artery while he performed the intestinal repair. Upon completing the intestinal repair, Dr. Wright failed to summon the on-call vascular surgeon to revascularize plaintiff's right leg to restore the blood flow to the leg as soon as possible. Subsequently, because of the delay in performing the revascularization, the plaintiff's leg was amputated. The plaintiff filed suit contending the delay caused by Dr. Wright caused him to lose his leg or caused him to lose a chance of saving his leg.
The main issue addressed by the supreme court was the extent of plaintiff's burden of proving causation of the claimed damages *502 after Dr. Wrights' insurer paid $100,000.00 in settlement of the claim against him, thus triggering an admission of liability pursuant to La.R.S. 40:1299.42 C(5). In finding a problem with the workability of the Pendleton procedure, the supreme court stated:
On reconsideration, we choose not to adhere to the Pendleton pre-trial procedure, but to refocus on which party has the burden of proving causation at trial. We now conclude that the legislative intent of "liability" in Section 1299.44 C(5) was that the payment of $100,000.00 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000.00 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.00.

Graham at 372.
While it appears the Pendleton rule has been replaced with a simple rule that the plaintiff has the burden of proving damages in excess of $100,000.00, we do not find this new rule applicable to this case. Instead, we find the law of the case doctrine to be appropriate. In Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81 (La. 1973), the supreme court explained:
The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.

Id. at 83.
We believe the assigned reasons apply to the present case. Therefore, in light of Pendleton and our review of the record, we affirm the ruling of the trial court and find no abuse of discretion.

ASSIGNMENT OF ERROR NUMBER TWO
In its second assignment of error, LPCF argues that the trial court erred in granting summary judgment in favor of the plaintiffs. LPCF alleges the trial court's granting of summary judgment was improper because there did exist genuine issues of material fact.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgments are reviewed on appeal de novo. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the party is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La. 7/5/94), 639 So.2d 730.
The Louisiana legislature, by Act No. 9 of the first extraordinary session of 1996, amended La.Code Civ.P. art. 966 to provide that the summary judgment procedure is favored. The amendment does not change the law regarding burdens of proof in a summary judgment proceeding. The burden of proof remains on the mover to prove the absence of a genuine issue as to material fact and his entitlement to judgment. La.Code Civ.P. art. 966(C), (G); Short v. Giffin, 96-0361 (La.App. 4 Cir. 8/21/96), 682 So.2d 249. However, in order to rebut a showing that no genuine issue as to material fact exists, the non-moving party will now be held to a higher standard of proof, i.e. a non-moving party must sufficiently establish the existence of proof of an essential element of his claim on which he is to bear the burden of proving at trial. La.Code Civ.P. art. 966(C).
We must first determine if a genuine issue of material fact does exist. LPCF argues: *503 (1) there exists a genuine issue of material fact regarding the distinction between original and secondary harm; (2) this is not a wrongful death action; and (3) the award for lost income presupposes that Mrs. Pendleton had a normal life.
We find these arguments unpersuasive. The issue of original harm was decided by the trial court during the Pendleton hearing held January 6, 1997. We have affirmed the trial court's decision above. Likewise, the wrongful death issue has been discussed above.
Thus, the only issue that remains is damages. LPCF argues that the trial court erred by awarding damages for lost income based upon a normal life expectancy. However, the trial court's judgment set out a lump sum award for each plaintiff. Neither award indicated what amount was attributable to lost income. We can only guess what portion of the award is for lost income. Nevertheless, we find it unnecessary to do so. The plaintiffs alleged that damages were suffered in several areas. Considering this fact along with Dr. Barrett's admission of malpractice and the trial court's ruling that Mrs. Pendleton's death constituted original harm, our review of the record indicates that summary judgment is appropriate.
We believe the plaintiffs have sufficiently proven the absence of a genuine issue and they are entitled to judgment as a matter of law. We further believe that LPCF has failed to sufficiently establish the existence of proof of an essential element of their claim as required under La.Code Civ.P. art. 966(C). As such, we cannot say that the trial court erred in granting the plaintiffs' motion for summary judgment.

DISPOSITION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant.
AFFIRMED.
YELVERTON, J., dissents and assigns reasons.
YELVERTON, Judge, dissenting.
The only liability evidence favorable to the plaintiffs was the testimony of their expert, Dr. Bussey. Dr. Bussey's testimony cannot be interpreted to say that death was the primary harm of Dr. Barrett's negligence in the diagnosis and treatment of the malignant tumor. Her death was caused by the cancer, not by the doctor's negligence. The doctor's negligence perhaps caused her a loss of a chance of survival. A loss of a chance of survival is the only primary harm I can find on the record we have before us. It is questionable whether her death was even a secondary harm caused by the doctor's negligence. Finding it to have been the primary harm is manifest error.
The damages awarded by the trial judge were damages for wrongful death. Since this was not factually a wrongful death action, the damages should have been evaluated by resort to the methodology for fixing damages attributable to the loss of a chance of survival. Damages for loss of a chance of survival have yet to be fixed by any court. This court of appeal cannot now fix those damages because we do not have a transcript of the 1993 trial, the only place where the evidence relating to such damages may exist.
It is my opinion that we should reverse the factual finding that death was the primary harm of Dr. Barrett's negligence, order a transcript of the 1993 trial, and then fix damages, if appropriate, for the loss of a chance of survival.
For these reasons I respectfully dissent.