# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1184

**JESSIE LEARY, III AND DORIS SPEARS LEARY**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND ANDRE B. DOBISON**

************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 2006-9025-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.

**AFFIRMED.**

**Jerold Edward Knoll**
**The Knoll Law Firm, L.L.C.**
**Post Office Box 426**
**Marksville, LA 71351**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Jessie Leary, III**
    **Doris Spears Leary**

**David Hughes**
**Hughes & LaFleur**
**Post Office Box 1831**
**Alexandria, LA 71309**
**(318) 443-4090**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Andre B. Dobison**

PETERS, J.

One of the defendants in this automobile accident litigation, Andre B. Dobison, appeals the trial court's quantum award to the plaintiffs, Jessie Leary, III and Doris Spears Leary. For the following reasons, we affirm the trial court judgment.

**DISCUSSION OF THE RECORD**

This litigation arises from a December 23, 2005 automobile accident which occurred on Louisiana Highway 29 (La. 29) in Avoyelles Parish, Louisiana, at approximately 2:25 a.m. The accident occurred when a vehicle being driven by Dobison crossed the centerline of La. 29 and struck a vehicle being driven by Jessica Shantrelle Leary (Jessica). Jessica died as a result of the injuries she sustained in the accident.

Both drivers sustained serious physical injuries in the collision. Emergency medical personnel initially transported Jessica to Bunkie General Hospital (Bunkie General) in Bunkie, Louisiana where she received immediate treatment for her injuries. At approximately 10:00 a.m. on that same morning, Jessica was transferred by ambulance to Christus St. Francis Cabrini Hospital (Cabrini Hospital) in Alexandria, Louisiana, where she underwent surgery for treatment of her injuries. At approximately 6:22 a.m. on Christmas Eve, Jessica died from her injuries.

Emergency medical personnel also transported Dobison to Bunkie General from the accident scene. The medical personnel at the Bunkie General emergency room extracted a blood sample from Dobison to test for alcoholic content. The test results revealed that at 4:43 a.m., or some two hours and eighteen minutes after the accident, Dobison's blood alcohol concentration was 0.07 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood. After receiving some initial treatment at Bunkie General, Dobison was transferred to Rapides

Regional Medical Center in Alexandria, Louisiana, where he remained for eleven days.

Jessie Leary, III and Doris Spears Leary, who are Jessica's parents, brought this action for damages against Dobison and his liability insurer, State Farm Mutual Automobile Insurance Company (State Farm). Following a June 8, 2007 bench trial, the trial court entered judgment in favor of the Learys, awarding $650,000.00 in survival damages; $900,000.00 in wrongful death damages; $1,700,000.00 in punitive damages; and $75,181.90 in hospital, medical, and funeral expenses. In his appeal, Dobison asserts the following assignments of error:[1]

1. The trial court committed error in awarding plaintiffs $650,000.00 survival damages.

2. The trial court committed error in awarding each plaintiff $450,000.00 wrongful death damages.

3. The trial court committed error in awarding plaintiffs punitive damages.

4. The trial court committed error in awarding each plaintiff $850,000.00 in punitive damages or a total of $1,700,000.00 punitive damages.

**OPINION**

In the first two assignments of error, Dobison argues that the trial court awarded excessive damages, and that a review of prior awards for survival and wrongful death damages would establish this error. He does not contest the Learys' right to recover survival or wrongful death damages. Instead, he asserts only that the awards are excessive.

---

[1]State Farm has not appealed. Its insurance policy provided bodily injury liability limits of $25,000.00 per person. On June 13, 2007, State Farm paid the Learys its policy limits and court costs through that day. In exchange, the Learys executed a partial release and satisfaction of judgment.

In considering these assignments of error, we first note the guidance supplied by the supreme court to appellate courts in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994):

> [T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

Thus, the first step is to determine whether the trial court abused its vast discretion. Consideration of prior awards play no part in resolving that issue.

> Resorting to a comparison of prior awards is only appropriate *after* the reviewing court has concluded that an abuse of discretion has occurred. Thus, the initial inquiry for this court is whether the jury abused its discretion in assessing the amount of damages. If the court concludes that it has, *then and only then may the prior awards be used* for determining the highest or lowest amount that was reasonably within that discretion.

*Cone v. Nat'l Emergency Serv., Inc.*, 99-934, p. 8 (La. 10/29/99), 747 So.2d 1085, 1089 (citations omitted, emphasis added).

Survival damages may be awarded for the pre-death mental and physical pain and suffering of the deceased. *Temple v. Liberty Mut. Ins. Co.*, 330 So.2d 891 (La.1976). In determining survival damages, the court should consider the severity and duration of any pain or any pre-impact fear experienced by the deceased, and any other damages sustained by the deceased up to the moment of death. *Guillot v. Valley Forge Ins. Co.,* 99-1044 (La.App. 3 Cir. 12/8/99), 753 So.2d 891. "Survival damages are properly awarded if there is even a scintilla of evidence of pain or suffering on the part of the decedent, and fright, fear, or mental anguish during an ordeal leading to the death is compensable." *Patrick v. Employers Mut. Cas. Co.*, 99-

3

94, p. 17 (La.App. 3 Cir. 8/11/99), 745 So.2d 641, 652, *writ denied*, 99-2661 (La. 11/24/99), 750 So.2d 987.  When a person dies due to the fault of another, leaving no surviving spouse or children, her parents acquire the right to recover all damages suffered by her prior to her death.  La.Civ.Code art. 2315.1(A)(2).

The record establishes that in December of 2005, Jessica was on holiday break from her studies at the University of Louisiana, in Lafayette, Louisiana.  During the holiday break, she had obtained employment at the Paragon Casino in Marksville, Louisiana and, at the time of the accident, was returning to her parents' home in Bunkie, Louisiana, after completing a work shift at the casino.

The physical evidence at the scene of the accident established that Jessica obviously realized her precarious position when Dobison entered her lane of travel because the point of impact occurred at a point where her vehicle was only partially on the travel lane.  Louisiana Master Trooper Nathan Beaubouef, the investigating officer for the Louisiana State Police, concluded that Jessica had slowed her vehicle before the collision, and may have even come to a stop.  Despite her every effort to avoid the collision, Dobison came completely across Jessica's lane of travel.  The impact drove Jessica's vehicle fifteen feet off the roadway, and another nineteen feet down an embankment.  Emergency personnel worked for over an hour to extract her from her mangled vehicle.

Jessica suffered massive blood loss from a liver laceration.  Additionally, she sustained fractures in her right foot and left femur, a contusion of the bladder, and a separated pelvis.  At Bunkie General, Jessica was conscious, somewhat incoherent, and in tremendous pain.  She received blood transfusions because of the initial loss of blood.  According to Doris Leary, her daughter continually asked that her body be

4

turned over because of the pain in her back. Mrs. Leary accompanied Jessica during the ambulance trip to Alexandria on the morning of December 23. According to Mrs. Leary, the treating EMT who accompanied Jessica had to request that the driver negotiate the curves in the highway at a slow speed because that slight movement caused Jessica significant pain, and she was constantly moaning and groaning in each such maneuver.

At Cabrini Hospital, Jessica continued to request that she be turned on her side because of the pain in her back. After her surgery, Jessica was placed in the intensive care unit and continued to receive blood transfusions. The record reflects that, overall, she received three times her volume of blood and this continuous requirement caused her entire body to swell. By the early morning hours of December 24, Jessica's body had essentially shut down. She died at 6:22 that morning.

Considering the obvious pre-impact fear Jessica suffered, as well as the pain and suffering she endured during the approximately twenty-eight hours of her remaining life, we find no abuse of discretion in the trial court award of $650,000.00 in survival damages.

Louisiana Civil Code Article 2315.2(A)(2) provides that when a person dies due to the fault of another, leaving no surviving spouse or children, her parents may bring suit to recover the damages which they sustained as a result of her death. A wrongful death action is intended to compensate the deceased's loved ones for the losses they sustained as a result of the death. "While it is impossible to place a monetary value on the life of a child, our jurisprudential system has established that a monetary award is the appropriate remedy to one who has suffered the loss of a loved one as a result of the negligence of another." *Anderson v. New Orleans Pub.*

*Serv., Inc.*, 583 So.2d 829, 833 (La.1991). The elements of damage for wrongful death are loss of love and affection, loss of services, loss of support, medical expenses, and funeral expenses. *Todd v. Sauls*, 94-10 (La.App. 3 Cir. 12/21/94), 647 So.2d 1366, *writs denied*, 95-206, 95-219 (La. 3/24/95), 651 So.2d 289. "Damages awarded for wrongful death are general damages since the value of the loss is not subject to a pecuniary calculation." *Patrick*, 745 So.2d at 652. Thus, this court must first review the award of damages to determine whether the trial court abused its vast discretion. *Youn,* 623 So.2d 1257.

The Learys first became aware of Jessica's accident at approximately 3:30 a.m. when an officer with the Bunkie Police Department notified them. Mr. Leary immediately traveled to the accident scene while his wife remained at home with their younger daughter, Shaylan. When Jessica was transported to Bunkie General, Mr. Leary called home and told his wife and Shaylan to meet him at the hospital. During Jessica's stay at Bunkie General, her parents were close at hand.

As previously stated, Mrs. Leary traveled in the ambulance with her daughter to Cabrini Hospital. She remained with her daughter until the early morning hours of December 24, when Mr. Leary insisted that she and Shaylan return to Bunkie and get some rest. Mr. Leary remained with Jessica. During those final hours, Mr. Leary remained by Jessica's hospital bed and, even though she was not responsive, he continued to speak to her in an attempt to lend comfort. When it became obvious that Jessica was not going to survive, he called his wife and told her to return to the hospital. Jessica died before Mrs. Leary and Shaylan arrived.

In summary, the Learys lost their daughter on Christmas Eve. The record reflects that she was twenty-one years old when she died, was one year from a college

6

degree in accounting, and was consistently on the Dean's List at college. It is obvious from the record that she and her parents had a very loving relationship and that they were intimately involved in each other's lives. Her parents were proud of her and she of them. For approximately twenty-eight hours before her injuries claimed her life, her parents were by her side and witnessed both her fight for life against impossible odds and her extreme pain and suffering. Given the record as a whole, we do not find that the trial court abused its vast discretion in awarding each parent $450,000.00 in wrongful death damages.

In his last two assignments of error, Dobison contests both the award of punitive damages and the amount of punitive damages. He asserts that the Learys failed in their burden of proving that he was intoxicated and that Jessica's injuries and subsequent death was caused by his wanton or reckless disregard for her rights and safety.

Louisiana Civil Code Article 2315.4 provides that punitive damages "may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries." In awarding punitive damages, the trial court obviously concluded that the Learys were successful in proving this issue by a preponderance of evidence. The trial court's determination as to whether the elements requisite to recovery under La.Civ.Code art. 2315.4 have been proven is a question of fact, which this court will not set aside in the absence of manifest error. *Riser v. Acadiana Limousine Serv., Inc.*, 96-1687 (La.App. 3 Cir. 4/30/97), 693 So.2d 330, *writ denied*, 97-1420 (La. 9/19/97, 701 So.2d 173).

The trial court based its finding that Dobison was intoxicated at the time of the accident on the testimony of Jimmy Barnhill, a forensic chemist and System Director of the North Louisiana Criminalistics Laboratory, and Trooper Beaubouef. Barnhill testified that, through retrograde extrapolation of the results of Bunkie General's blood alcohol testing, he determined that Dobison's blood alcohol concentration was between 0.104 and 0.127 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood. Trooper Beaubouef testified that he smelled alcohol on Dobison's breath, and when he asked Dobison if he had been drinking, Dobison refused to answer. Louisiana Revised Statute 14:98(A)(1)(b) provides that an individual operating a motor vehicle when his blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood is guilty of the offense of operating a vehicle while intoxicated.

At trial, Dobison testified that he had two mixed alcoholic drinks on the evening of December 22, 2005—one at 10:30 p.m., and the other at midnight. He did not dispute that he entered Jessica's lane of travel, but blamed his actions on fog and not alcohol. As to his refusal to answer Trooper Beaubouef's question, he asserted that he was unable to respond because of his physical pain at that time. Furthermore, he argues that the evidence was insufficient to establish his intoxication at the scene because Trooper Beaubouef did not testify as to obvious signs of intoxication such as slurred speech or staggering. Additionally, he asserts that Barnhill's retrograde extrapolation was inaccurate.

Both Trooper Beaubouef and Mr. Leary testified that there was no fog on the highways on the night of the accident. Additionally, Trooper Beaubouef testified that, given the surrounding circumstances at the accident scene, he did not speak to

8

or observe Dobison long enough to determine whether he was visibly impaired. Futhermore, the trial court accepted Barnhill's expert testimony as accurate. The trial court is free to assign whatever weight it deems appropriate to the testimony of expert witnesses subject to the manifest error standard of review on appeal. *Massie v. Deloach*, 04-1425 (La.App. 3 Cir. 3/2/05), 896 So.2d 1246, *writ denied*, 05-786 (La. 5/6/05), 901 So.2d 1107.

Given Barnhill's expert testimony, Dobison's admission that he had consumed some alcohol on the night of the accident, the particulars of the accident itself, and Trooper Beaubouef's detection of the odor of alcohol at the accident scene, we find no manifest error in the trial court's determination that Dobison was intoxicated at the time of the accident and that his intoxication was a cause-in-fact of the accident. *See Phelps v. White*, 94-267 (La.App. 3 Cir. 10/5/94), 645 So.2d 698, *writ denied,* 95-151 (La. 3/17/95), 651 So.2d 272.

Dobison also contends that proof of the element of wanton or reckless disregard for the rights and safety of others is lacking. With regard to that issue, this court has stated:

> To be considered wanton and reckless, typically, the necessary level of conduct is somewhere between an intent to do wrong and mere negligence. Actions knowingly taken which would likely cause injury to another fall within this category. Although no specific conduct by an actor is necessary, a conscious indifference to consequences must be shown. If the actor knows or should know that his actions will cause harm and proceeds anyway, there is a conscious indifference to consequences so that there is a wanton or reckless disregard for the rights and safety of others.

*Blackshear v. Allstate Ins. Co.*, 94-765, pp. 8-9 (La.App. 3 Cir. 12/7/94), 647 So.2d 589, 594-95 (citations omitted).

Applying these criteria to Dobison's actions as previously stated, we find that a trier of fact could conclude that the Learys overcame their burden of proof on this element.

9

Therefore, we find no merit in the argument that the Learys are not entitled to punitive damages pursuant to La.Civ.Code art. 2315.4.

In his final assignment of error, Dobison argues that the punitive or exemplary damage award of $850,000.00 to each parent is excessive. Exemplary damages are given to plaintiffs over and above the full compensation for their injuries for the purposes of punishing the defendant, of instructing him not to repeat the offensive action, and of deterring others from following the defendant's conduct. *Mosing v. Domas*, 02-12 (La. 10/15/02), 830 So.2d 967. "As with the review of a general damage award, the role of an appellate court in reviewing an award of exemplary damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Id.* at 979.[2]

Again, Dobison's primary argument is that in comparison with the exemplary damages awarded in other, similar, cases the award in this case is excessive. But our supreme court has specifically said that when considering whether an award is excessive, the reviewing court is not to compare the exemplary damages with awards from other cases. *Id.* Instead, our supreme court has set out four criteria to be used in determining whether the finder of fact has abused its discretion in setting an award of exemplary damages: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm suffered by the plaintiffs and the exemplary damages awarded; (3) the difference between the exemplary damages awarded and the civil or criminal penalties authorized or imposed in comparable cases; and (4) the defendant's economic wealth. *Id.*

---

[2]Dobinson asserts that the trial court's award is excessive under the Due Process Clause of the 14th Amendment to the United States Constitution, and therefore this court's review should be *de novo*. However, he failed to raise this constitutional issue in the trial court, and therefore it is waived. *Mosing v. Domas*, 02-12 (La. 10/15/02), 830 So.2d 967.

10

We have no hesitation in saying that the first factor fully justifies the award: Dobison's actions in driving after consuming enough alcohol to bring his blood level to at least 0.104 were reprehensible, and his irresponsible conduct led to actions that could clearly have been foreseen.

In applying the second factor, the court must examine the award "in light of the facts of the case and with reference to the actual damages awarded and the potential harm that could have resulted from the defendant's conduct." *Id.* at 981. In *Mosing,* our supreme court approved a ratio of compensatory to exemplary damages that was 1 to 9. The Learys were awarded $1,625,181.90 in compensatory damages and $1,750,000.00 in exemplary damages, a ratio of almost 1 to 1. This direct ratio is appropriate because here there is no greater potential harm that could have resulted from Dobison's conduct; Jessica died as a result of his driving while intoxicated.

The third factor requires us to compare the exemplary damages awarded with the possible criminal or civil penalties that could be imposed on Dobison for driving while intoxicated, first offense. Louisiana Revised Statute 14:98(B)(1) provides that the penalty for that offense is a fine of $300.00 to $1,000.00 and imprisonment of not less than ten days nor more than six months. As our supreme court noted in *Mosing*, "[w]hile the possible criminal monetary penalty is significantly less than the exemplary damage award in this case, the fact that the offense carries a term of imprisonment makes the difference in monetary penalties less relevant." *Id.* at 982.

The final factor to consider is Dobison's assets and income. Dobison is an independent contractor with Primerica Financial Services and is licensed with the Securities and Exchange Commission to issue insurance and mortgage loans. He earned $100,000.00 in 2005 and $115,000.00 in 2004. He and his former wife own

a rental home together, and he owns his own home, although it is subject to two mortgages. Additionally, he owns two vehicles. Based on this bare record of Mr. Dobison's earnings, the exemplary damages imposed, while at the high end, are not excessive.

After reviewing these factors and the record as a whole, we conclude that the trial court did not abuse its discretion in making this award.

## CONCLUSION

We affirm the trial court's judgment in all respects. We assess all costs of this appeal to the defendant, Andre B. Dobison.

**AFFIRMED.**