# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-385


**EUGENE ROULY**

**VERSUS**

**PERERO COMPANIES, INC. D/B/A DND LANDSCAPING**
**LUBA CASUALTY INSURANCE COMPANY**



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, NO. 13-04469(4)
HONORABLE SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## JIMMIE C. PETERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Billy H. Ezell, Judges.


**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED.**

**Karl W. Bengston**
**Bengston Law Firm, LLC**
**P. O. Drawer 51147**
**Lafayette, LA 70505**
**(337) 291-9119**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Eugene Rouly**

**H. Douglas Hunter**
**Gugliemo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.**
**P. O. Drawer 1329**
**Opelousas, LA 70571**
**(337) 948-8201**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Perero Companies, Inc. d/b/a DND Landscaping**
 **LUBA Casualty Insurance Company**

**PETERS, J.**

The defendants in this workers' compensation case, Perero Companies, Inc., d/b/a DND Landscaping (Perero), and LUBA Casualty Insurance Company (LUBA), appeal a judgment rendered by the workers' compensation judge (WCJ), finding the plaintiff, Eugene Rouly, to be totally and permanently disabled, and entitled to indemnity benefits retroactive to May 14, 2013. Mr. Rouly answered the appeal, seeking the reversal of a prior judgment rendered in favor of the defendants on an exception of prescription which terminated the defendants' obligation to pay his medical expenses. For the following reasons, we affirm the trial court judgment finding Mr. Rouly to be totally and permanently disabled and reinstating his indemnity benefits; reverse the trial court judgment granting the exception of prescription on the medical expenses issue; and remand the matter to the Office of Workers' Compensation for further proceedings consistent with this opinion.

**DISCUSSION OF THE RECORD**

On May 14, 2003, Mr. Rouly suffered a work-related accident when a dump truck struck the excavator he was operating for his employer, Perero. Neither Perero nor LUBA dispute the occurrence of the accident, but a 1990 work-related accident involving Mr. Rouly complicated the evaluation of the injuries he sustained in that accident.

In 1990, Mr. Rouly was employed by FMC Corporation (FMC) in South America when a helicopter in which he was a passenger crashed in the Andes Mountains. Mr. Rouly sustained burns to his body and injuries to his chest, neck, lower back, hands and knees. Among the other medical treatment he received for his injuries, he subsequently underwent an anterior cervical disk fusion with plating at C4-5 and C5-6, a right carpel tunnel release, and arthroscopic surgeries

on both knees. At the time of his 2003 accident, he was still suffering from a post-traumatic stress disorder (PTSD)[1] and chronic pain syndrome.

The matter now before us is not the first time that workers' compensation obligations owed to Mr. Rouly were the subject of litigation. On May 1, 2006, the various parties at interest in the 1990 and 2003 accidents entered into a workers' compensation benefits consent judgment in two consolidated suits,[2] which provided the following:

> 1. EUGENE ROULY, Employee, was in the course and scope of his employment with **Perero Company, Inc.[] d/b/a DND Landscape**, Employer, on May 14, 2003 when he suffered an accidental injury (the subject of Dkt. **#03-04120**);
>
> 2. As a result of that 2003 work-related injury, **Eugene Rouly**, Employee, is entitled to workers' compensation disability benefits and medical benefits, payable by **Perero Company, Inc.[] d/b/a DND Landscape**, Employer.
>
> 3. At the time of his 2003 accident, **Eugene Rouly** was receiving average weekly wages of $621.52, and he is entitled to compensation at the rate of $414.35 per week. As of the date of the parties' agreement, **Perero Company, Inc.[] d/b/a DND Landscape**, Employer, had paid all past due and accrued workers' compensation disability benefits.
>
> 4. **Eugene Rouly** is entitled to continuing medical care for injuries suffered in the 2003 accident. The charges for this treatment, as ordered by Dr. Robert Franklin, are payable by **Perero Company, Inc.[] d/b/a DND Landscape**, Employer.
>
> 5. **Eugene Rouly** has received medical care for the 2003 accident from Drs. Robert Morrow, John Clifford and Robert Franklin. He has had examinations or tests by Dr. James Domingue, and University Medical Center. As of the date of the parties' agreement, the charges for the medical services from these providers have either been paid or are authorized for payment by **Perero Company, Inc.[] d/b/a DND Landscape**, Employer.

---

[1] PTSD was described in the record as an anxiety disorder caused by an individual's psychological reaction to trauma they perceive as life-threatening.

[2] The judgment arose from the consolidation of two pending matters: *Rouly v. LUBA, et al.*, docket number 03-04120, and *Rouly v. FMC Corporation*, docket number 05-06282.

2

6. **Eugene Rouly** suffered from Post Traumatic Stress Disorder and Chronic Pain Syndrome caused by his accidental injury while in the course and scope of his employment with FMC Corporation in 1990 (the subject of Dkt. **#05-06282**).

7. As a result of that 1990 work-related injury **Eugene Rouly** is entitled to medical benefits only. **Eugene Rouly**, Employee, is entitled to continuing medical care for Post Traumatic Stress Disorder and Chronic Pain Syndrome, including pharmacy services, as ordered by Dr. James Blackburn, payable by **FMC Corporation**, Employer.

8. **Eugene Rouly** has received medical treatment for the 1990 accident from Dr. James Blackburn. As of the date of the parties' agreement, the charges for the medical services from this provider have either been paid or are authorized for payment by **FMC Corporation**, Employer.

The parties expressly reserved for resolution by other proceedings herein the claims of Eugene Rouly for penalties and attorney fees, and the claims and counter-claims by and between Perero Company and FMC Corporation seeking the reimbursement of their payments between the parties. All other issues not agreed to herein remain at issue between the parties. The Court has reviewed the evidence previously submitted, heard the arguments of counsel, and is in accord with the agreements of the parties as stated on the record in open Court on January 25, 2006, therefore:

IT IS ORDERED ADJUDGED AND DECREED THAT **Perero Company, Inc.[] d/b/a DND Landscape**, Employer, is liable to **Eugene Rouly**, Employee, for workers' compensation disability benefits at the rate of $414.35 per week and for the costs of his medical treatment for his injuries related to the accident of 2003;

IT IS FURTHER ORDERED ADJUDGED AND DECREED THAT **FMC Corporation**, Employer, is liable to **Eugene Rouly**, Employee, for the costs of his medical treatment for Post Traumatic Stress Syndrome and Chronic Pain Syndrome resulting from his injuries of 1990; and

All other claims, defenses and disputes by or between the parties are reserved to them for resolution [in] subsequent proceedings.

After this consent judgment, Perero and LUBA continued paying weekly benefits to Mr. Rouly until May 24, 2013, when they unilaterally stopped all payments. On June 6, 2013, Mr. Rouly filed the matter before us—a disputed claim for workers compensation benefits against Perero and LUBA. In that

pleading, Mr. Rouly sought reinstatement of his indemnity and medical benefits, as well as penalties, and attorney fees from Perero and LUBA based on their termination of his indemnity benefits and their refusal to reimburse his medical-related travel expenses.

In their answer to the filed claim, Perero and LUBA questioned the extent of Mr. Rouly's disability and asserted that his claim for medical benefits had prescribed. Thereafter, Perero and LUBA filed exceptions of res judicata and prescription, a motion in limine, and/or a motion for summary judgment based on the May 1, 2006 partial judgment.

Following a hearing on the preliminary issues, the WCJ sustained the exception of prescription as to all of Mr. Rouly's claims for medical benefits, but denied the exception of res judicata and the other motions. This court rejected an application for supervisory writs filed by Perero and LUBA addressing that part of the WCJ's rulings rendered in Mr. Rouly's favor. *Rouly v. Perero Co., Inc. d/b/a DND Landscape*, 15-71 (La.App. 3 Cir. 3/10/15) (unpublished writ).

At the beginning of the September 2, 2015 trial on the merits, the parties stipulated that the only issue at trial was whether Mr. Rouly was totally and permanently disabled. Perero and LUBA further stipulated that Mr. Rouly had already been paid 520 weeks of workers' compensation benefits. After completion of the evidentiary phase of the trial, the WCJ rendered judgment finding that Mr. Rouly had established by clear and convincing evidence that the injuries he sustained in the May 14, 2003 accident rendered him totally and permanently disabled. In reaching that decision, the WCJ concluded that the 2003 work-related accident caused an aggravation of Mr. Rouly's preexisting PTSD and chronic pain syndrome. The WCJ's November 9, 2015 written judgment also ordered the reinstatement of Mr. Rouly's indemnity benefits, at a weekly rate of $414.35, and

4

awarded legal interest on all past-due payments.

Perero and LUBA perfected this appeal, asserting that the WCJ erred in awarding Mr. Rouly total and permanent disability benefits. Mr. Rouly answered the appeal, seeking a reversal of the WCJ's grant of the exception of prescription.

**OPINION**

A finding of disability is a legal determination reached by the trier of fact upon consideration of a totality of the evidence, both lay and medical. Thus, a disability finding is a question of fact, which cannot be reversed absent manifest error. *Batiste v. Tenet Healthcare Corp.*, 09-1192 (La.App. 1 Cir. 2/12/10), 35 So.3d 352, *writ denied*, 10-559 (La. 5/7/10), 34 So.3d 864.

A finding of total and permanent disability is only possible if an employee is unemployed and proves, "by clear and convincing evidence, unaided by any presumption of disability," that he "is physically unable to engage in any employment or self-employment[.]" La.R.S. 23:1221(2)(c); *Conerly v. Triad Nitrogen*, 12-2032 (La.App. 1 Cir. 8/14/13), 123 So.3d 273, *writs denied*, 13-2441, 13-2515 (La. 1/10/14), 130 So.3d 329, 330. Workers' compensation benefits awarded based on a finding of temporary total disability are payable only as long as the extent of an employee's disability is unknown. La.R.S. 23:1221(1)(d). Once it is known, the payment of temporary total disability benefits ceases. Additionally, workers' compensation benefits awarded as supplemental earnings benefits to an employee unable to ninety percent or more of his pre-injury wages, are terminated after 520 weeks. La.R.S. 23:1221(3)(d).

In *Comeaux v. City of Crowley*, 01-32, p. 8 (La. 7/3/01), 793 So.2d 1215, 1220 (quoting H. Alston Johnson, *Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute*, 44 La.L.Rev. 669, 686 (1984)), the supreme court noted:

The underscored, heightened standards were enacted in 1983 as part of the legislation tightening the scope of permanently, totally disabled status. "These are difficult burdens for the worker, and the changes clearly reflect the intent that awards for total and permanent disability should be very unusual and that maximum awards for SEB for those 'able to work' should also be rare."

The supreme court classified the clear and convincing burden of proof as "an 'intermediate' standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard." *Id.* It further pointed out that a finding of total and permanent disability is improper absent a prior determination that the injured employee is incapable of being vocationally rehabilitated for any other position pursuant to La.R.S. 23:1226(D), which provides:

Prior to the workers' compensation judge adjudicating an injured employee to be permanently and totally disabled, the workers' compensation judge shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.

Accordingly, the supreme court held that La.R.S. 23:1221(2)(c) and La.R.S. 23:1226(D) must be read *in pari materia* before an employee may be classified as permanently and totally disabled. *Id.* Thus, the burden in this matter is on Mr. Rouly to establish be clear and convincing evidence that he is totally disabled, and that there is no reasonable probability that, even "with appropriate training or education," he cannot be rehabilitated to the extent that he "can achieve suitable gainful employment[.]" La.R.S. 23:1226(D). We find that the evidence supports the finding of the WCJ in this regard.

The record reflects that when Mr. Rouly, who was sixty-years-old at the time of the trial on the merits, began his employment with Perero he was still suffering from the injuries he sustained in the 1990 helicopter accident. Those

6

injuries included, but were not limited to, PTSD and chronic pain syndrome for which he was receiving treatment from Dr. James H. Blackburn, a Lafayette, Louisiana psychiatrist.

Seven days after the May 14, 2003 accident, LUBA caused Mr. Rouly to be examined by Dr. Thomas J. Montgomery, a Lafayette, Louisiana orthopedic surgeon. After obtaining a history from Mr. Rouly and after examining him, the doctor concluded that Mr. Rouly had suffered either a cervical or a thoracic strain as a result of the May 14, 2003 accident. Based on his findings, he concluded that Mr. Rouly could perform sedentary work but restricted him from returning to work pending further evaluation by Dr. John R. Clifford, a Baton Rouge, Louisiana neurosurgeon who had treated Mr. Rouly after the 1990 accident. Dr. Montgomery testified that he was also aware that Mr. Rouly was under pain management care from Dr. Blackburn and he took multiple medications to control the problems he had experienced since the 1990 accident. Dr. Montgomery also testified that Mr. Rouly told him that his previous condition was aggravated by the May 14, 2003 accident.

Dr. Blackburn had originally begun treating Mr. Rouly for PTSD in July of 1999,[3] and continued treating him after the 2003 accident. Initially, Dr. Blackburn's goal was to treat Mr. Rouly's PTSD and the accompanying pain caused by his anxiety and stress of that condition. It was only later that the doctor expanded his treatment to include Mr. Rouly's chronic pain syndrome. The treatment of these two conditions ultimately combined into a pain management program. By the time of trial in this matter, Dr. Blackburn had seen Mr. Rouly professionally eighty times. That long-time professional relationship began with

---

[3] Dr. Blackburn testified that he took over Mr. Rouly's treatment from another psychiatrist who had treated him since the 1990 accident.

7

Dr. Blackburn recognizing the strong desire in his patient to return to the work force. In fact, the record before us makes it very clear that Mr. Rouly was not the type of person to shy away from work.

Despite having less than a ninth grade education, and despite failing the GED three times, Mr. Rouly always seemed to be able to find employment. Before going to work for FMC, he had been employed in the oil field in various positions including roustabout, floorhand, derrickman, driller, tool pusher, and wire line operator. Additionally, at other times, he operated heavy equipment and became a tack welder. During his off-time with FMC, he assisted his farmer relatives in their endeavors; and at the time of his 1990 accident, he had reached the position of senior service coordinator with FMC. That position carried with it management responsibilities in some of FMC's activities.

Even after his helicopter accident, Mr. Rouly worked through his injuries and continued to find employment where he could. In September of 1999, after his attempts to start a private enterprise failed for lack of business, he began working for the Iberia Parish Sheriff's Office[4] as a driver transporting prisoners at $6.00 per hour. In conjunction with that employment, he immediately became involved in a training program in an effort to become certified in other aspects of law enforcement. However, the minimum income being produced and the stress associated with being around criminals took its toll, and he left employment with the Sheriff's Office in February of 2000.

In that same month, he found employment operating heavy equipment for Iberia Parish. He quit his position with Iberia Parish in May of 2001 because of the pain associated with operating of heavy equipment, but soon thereafter, he

---

[4] The Sheriff's Office apparently accommodated Mr. Rouly's medication needs in performing the duties of his position.

obtained a similar position with Perero through the intercession of a friend. This employment lasted until his May 14, 2003 accident.

Mr. Rouly's attempts at these heavy-duty employment opportunities while recovering from his injuries sustained in the 1990 accident resulted in significant absenteeism on his part, but given his education and work skills, there was no less strenuous employment available to him. Before his May 14, 2003 accident, he often confessed to Dr. Blackburn that he did not know how long he could continue in his line of work, and he told the doctor that his neck locked up on him when he operated a specific type of heavy equipment. Additionally, he confessed to Dr. Blackburn that on occasion he would revert to using a cane to ambulate.

Dr. Blackburn did not necessarily agree with Mr. Rouly's determination to return to heavy-duty employment, but he helped him through the pain with medication. However, he opined that the right shoulder injury sustained in the May 14, 2003 accident increased Mr. Rouly's existing pain problem and severely impaired his ability to function. Additionally, Dr. Blackburn opined that the May 14, 2003 accident aggravated the prior cervical and thoracic spine injuries Mr. Rouly sustained in the 1990 accident, thereby accelerating the progressive deterioration those injuries caused him.

Mr. Rouly had not returned to any form of employment after the May 14, 2003 accident, and Dr. Blackburn described his patient's condition at the time of trial to be that of severe depression, concomitant with his pain disorder and, especially his inability to work. According to Dr. Blackburn, because of Mr. Rouly's strong work ethic, the depravation of his ability to return to work was devastating to his preexisting PTSD and chronic pain syndrome conditions. He testified that Mr. Rouly's condition at the time of the trial required pain medication in amounts approximately four times the dosage he was taking before the May 14,

2003 accident; and included oxycodone for pain and Remeron, valium, and Lyrica for depression and anxiety. Additionally, Dr. Blackburn prescribed atypical antipsychotic medications based on Mr. Rouly's level of emotional turmoil and distress immediately after the May 14, 2003 accident, and he tried different antidepressants and mood stabilizers in order to find medications that worked on him. None of these medications effectively improved Mr. Rouly's emotional distress, depression, or physical pain. Given all of his findings, Dr. Blackburn was of the opinion that Mr. Rouly was totally and permanently disabled. In his opinion, no rehabilitation program exists that would enable Mr. Rouly to sufficiently improve to a level where he could return to any type of gainful employment. In fact, he opined that if Mr. Rouly attempted to start any such program, it would probably increase his levels of frustration and despair.

Shortly after the May 14, 2003 accident, and because he was fearful of additional injury to his cervical spine, Mr. Rouly contacted Dr. Clifford who had performed the C4-5 and C5-6 cervical fusion procedure on him in August of 1997, for evaluation of the effect of the accident on the fusion. Dr. Clifford ultimately concluded that the May 14, 2003 accident caused no damage to the cervical fusion. However, MRIs of the cervical, lumbar, and thoracic spine, and an MRI of the right shoulder taken at Dr. Clifford's instruction caused him to conclude that degenerative changes existed above and below the cervical fusion as well as in the lumbar and thoracic spine; and that Mr. Rouly had suffered a partial tear of the right shoulder rotator cuff, with degenerative changes in the supporting joint. Dr. Clifford ultimately concluded that the rotator cuff tear would be better addressed by an orthopedic surgeon and, thereafter, Mr. Rouly sought treatment from Dr. Robert L. Morrow, a Lafayette, Louisiana orthopedic surgeon.

Dr. Morrow saw Mr. Rouly on October 30, 2003, and the patient's main complaints were that of shoulder pain and numbness and tingling in the right hand. He reviewed the September 23, 2003 MRI ordered by Dr. Clifford and confirmed the finding of a tear at the lateral edge of the right acromion and a possible brachial plexus neuropathy versus an ulnar nerve compromise at the elbow or wrist. A subsequent EMC/nerve conduction study revealed no evidence of radiculopathy, but indicated lesions of the right median nerve at the wrist and at the right ulnar nerve at the wrist and elbow. Accordingly, Dr. Morrow diagnosed Mr. Rouly as suffering from a right rotator cuff tear and a neural problem at either his right elbow or wrist.

Dr. Morrow related Mr. Rouly's shoulder injury to the May 14, 2003 accident, but concluded that the possible neural problem with the right elbow or wrist was more likely than not a result of inactivity and swelling of the upper extremity resulting from Mr. Rouly's immobilization of the right arm. Dr. Morrow recommended that Mr. Rouly undergo surgery to repair the rotator cuff damage after strengthening the shoulder through physical therapy. Depending on Mr. Rouly's functioning after surgery, he would restrict him from overhead repetitive activities or heavy lifting, although he expressed the opinion that Mr. Rouly could operate heavy equipment once he reached maximum medical improvement (MMI) from the shoulder surgery. He expected Mr. Rouly to reach MMI within six months to one year from the surgery. He last saw Mr. Rouly on December 23, 2003.

Approximately three years after the May 14, 2003 accident, Mr. Rouly met with Elier Diaz, a vocational rehabilitation counselor hired by Perero and LUBA. However, Mr. Diaz was unable to produce any available job or training program for Mr. Rouly. A March 28, 2007 report prepared by Mr. Diaz states that he

11

performed labor market surveys on behalf of Mr. Rouly on February 22, February 27, March 9, and March 13 of 2007, and of the thirty-four jobs identified in those surveys,[5] some positions exceeded Mr. Rouly's restrictions, others were not hiring at the time, and still others required a call back. According to the report, LUBA instructed him to close Mr. Rouly's file on March 26, 2007.

An April 16, 2007 independent medical examination by Dr. Randal D. Lea, was limited to Mr. Rouly's right shoulder despite his complaints of widespread pain. Dr. Lea noted that Mr. Rouly exhibited signs of right shoulder pathology and that an MRI of the shoulder suggested a partial rotator cuff tear with acromioclavicular joint degenerative changes and cuff tendonitis. He recommended that the shoulder problem first be treated with injections, and only if this treatment provided temporary relief would he obtain an MRI of the shoulder to determine whether arthroscopic surgery and decompression of the shoulder was an appropriate remedy for Mr. Rouly's condition. If the injections provided total relief, surgical intervention would not be required; and if the injections provided no relief at all, this would be evidence that the pathology of the pain was something other than the shoulder. Given Mr. Rouly's overall clinical profile, Dr. Lea felt that additional therapy would provide little benefit, and absent injection relief or interventional surgery, Mr. Rouly would simply have to learn to live with the discomfort in his right shoulder.

Dr. Lea agreed with Dr. Clifford that the right shoulder injury would not preclude Mr. Rouly from performing sedentary work. With regard to that type of activity, Dr. Lea proposed imposing the following restrictions: (1) lift ten pounds intermittently for ten percent of the work day; lift frequently five pounds or less;

---

[5] The identified jobs included positions with answering services, taxi companies, and check cashing companies.

12

limit overhead lifting to ten to fifteen percent of the work day, intermittently; no overhead lifting of five to seven pounds; push, pull, and carry at the same exertion levels; reach through midrange thirty to fifty percent of the work day, intermittently; reach full range twenty percent of the work day, intermittently; bend, twist, turn, kneel, and stoop at pre-accident levels; no climbing overhead ladders, but can climb stairs with rails; and sit approximately one and one-half hours, stand one hour, and walk intermittently up to one hour at a time.

Dr. Lea noted in his report that he thought Mr. Rouly's functional level would improve if he had the injections and an uncomplicated right shoulder surgery. However, he opined that because Mr. Rouly thought of himself as being disabled and because of his skewed Wahler Physical Symptoms Inventory and ADL survey, "[t]his does suggest that it may be difficult to anticipate that Mr. Rouly will ever return to any type of work regardless of what is done medically." He placed Mr. Rouly at MMI for his right parascapular injury twelve to eighteen months post-injury and at MMI for his right acromioclavicular joint twelve months post-injury or, if he undergoes surgery, four to six months post-surgery barring complications.

At the close of the evidentiary phase of the litigation, the WCJ issued oral reasons for judgment finding that Mr. Rouly proved by clear and convincing evidence that the May 14, 2003 work accident aggravated his preexisting PTSD and chronic pain syndrome, and that he was totally and permanently disabled as a result of the injuries he sustained in the accident. In reaching that conclusion, the WCJ stated the following:

> Let me be clear. I am relying on Dr. Blackburn's testimony. As I told y'all – and I don't remember what we discussed on or off the record, so I may repeat myself just to make sure that the record is clear. As I told y'all earlier, I anticipated a large extent of what Mr. Rouly would say, and yes, I find Mr. Rouly's testimony to be self-

13

serving. Yes, I believe there's a strong possibility that his perception is a big issue here, and that his perception is greater than what the actual facts may bear out. But without having a crystal ball that's allowed into evidence, I don't think that counts against him meeting his burden. Dr. Blackburn finds him to be an appropriate patient, and Dr. Blackburn clearly, without hesitation, is of the opinion that there was an aggravation in both the chronic pain and the psychological disability with the 2003 accident.

Do I have concerns? Yes. Do I believe everything Mr. Rouly is telling me? No. Does that prevent me from finding that the full weight of the evidence establishes clearly and convincingly that he's totally and permanently disabled? No, I'm not prevented from that. As I said, it causes me some concern, distaste, but I believe, legally, the burden has been met through the testimony of Dr. Blackburn, which I also believe met the requirement of establishing that there was no possibility of rehabilitation to return him to the job force. So, that would be retroactive to the dates the benefits were terminated after payment of 520 weeks.

It is well settled that "[t]he trial court is free to assign whatever weight it deems appropriate to the testimony of expert witnesses subject to the manifest error standard of review on appeal." *Leary v. State Farm Mutual Auto. Ins. Co.*, 07-1184, p. 9 (La.App. 3 Cir. 3/15/08), 978 So.2d 1094, 1101, *writ denied*, 08-727 (La. 5/30/08), 983 So.2d 900. In fact, "[t]he effect and weight to be given expert testimony is within the broad discretion of the trial judge." *Pendleton v. Barrett*, 97-570, p. 4 (La.App. 3 Cir. 12/23/97), 706 So.2d 498, 501.

As is made clear from the oral reasons for judgment cited above, the WCJ relied extensively on the testimony of Dr. Blackburn to find that Mr. Rouly had carried his burden of proof on the disability issue. We find no error in the WCJ's reliance on Dr. Blackburn's opinion, nor do we find manifest error in the WCJ's factual conclusions derived from Dr. Blackburn's testimony.

While all of the medical evidence recognizes that Mr. Rouly sustained a right shoulder injury that rendered him temporarily and totally disabled, and all the rehabilitation evidence makes it clear that Mr. Rouly's path to gainful employment would be limited to some form of physical labor after recovery from the shoulder

14

injury, Dr. Blackburn's testimony was the only testimony that addressed the effect the May 14, 2003 injury had on Mr. Rouly's long-standing PSTD and chronic pain syndrome residuals from the 1990 accident. Dr. Blackburn's opinion that Mr. Rouly's May 14, 2003 accident aggravated those two underlying conditions to the extent that his patient is permanently precluded from returning to gainful employment was based on at least eighty separate medical evaluations extending over a period beginning in 1999, and extending through the September 12, 2015 trial on the merits. According to Dr. Blackburn, Mr. Rouly's pain medication requirements had increased four-fold since the May 14, 2003 accident, and no combination of medication has had an effect on his increasing emotional distress, depression, or physical pain. He opined that no existing rehabilitation program would enable Mr. Rouly to improve to a level where he could return to gainful employment, and that participation in any such program would simply increase his levels of frustration and despair.

Based on the record before us, we find no merit in this assignment of error.

### *Answer to Appeal*

In his answer to the appeal, Mr. Rouly asserts that the WCJ erred in sustaining the exception of prescription relative to his request for medical benefits submitted more than three years after Perero and LUBA made their last such payment. He argues that because FMC is solidarily liable with Perero and LUBA based on the fact that his May 14, 2003 accident aggravated the PTSD and chronic pain syndrome caused by his 1990 work accident, FMC's continuous payment of medical expenses interrupted the prescription on medical expenses owed by Perero and LUBA. He further argues that the prescription on his medical expenses claim was interrupted by his two pending and still unresolved claims for workers' compensation. Because we find merit in Mr. Rouly's first contention, we limit our

15

discussion to that argument.

The question of solidary liability between employers and the payment by one solidary obligor interrupting prescription relative to medical expenses owed by the other solidary obligor was addressed by this court in *Rave v. Wampold Cos.*, 06-978, p. 6 (La.App. 3 Cir. 12/6/06), 944 So.2d 847, 851-52:

> Our jurisprudence holds that when the present disability of an employee in a workers' compensation claim is due to a combination of two or more successive accidents *or* due to the second accident's having aggravated the prior injury, both the subsequent compensation *insurer* and the insurer at the time of the first accident are solidarily liable for compensation benefits and medical expenses. *Prevost v. Jobbers Oil Transport Co.*, 95-0224 (La.App. 1 Cir. 10/6/95), 665 So.2d 400, *writ denied*, 96-0440 (La.4/8/96), 671 So.2d 336; *Labeaud v. City of New Orleans, Department of Property Management*, 576 So.2d 624 (La.App. 4th Cir.), *writ denied*, 581 So.2d 687 (La.1991). Likewise, when a combination of work-related accidents causes a disability, *or* where by virtue of a second accident a prior injury is aggravated causing disability, both the subsequent *employer* and the employer at the time of the first work-related accident are solidarily liable for compensation benefits and medical expenses. *Hill v. Manpower-Collier Investments*, 30,444 (La.App. 2 Cir. 4/8/98), 712 So.2d 560; *Tron v. Little Italiano, Inc.*, 38,556 (La.App. 2 Cir. 6/25/04), 877 So.2d 1055.
>
> In fact, it has been well-settled for at least sixty-five years that in instances of two or more accidents, all of which are contributing causes of the ultimate disability, the employers and their insurers at the time of such accidents may be held solidarily liable for the payment of compensation.

In this instance, notwithstanding the May 1, 2006 consent partial judgment and the last medical benefit payment by Perero and LUBA on September 26, 2008, Perero and LUBA are solidarily liable with FMC for Mr. Rouly's medical expenses based on the WCJ's specific finding that his preexisting chronic pain syndrome and PTSD were aggravated as a result of his May 14, 2003 work accident. In his trial testimony, Dr. Blackburn stated that he had seen Mr. Rouly eighty times as of July of 2015. He further indicated in his deposition testimony that this treatment was paid for by Mr. Rouly's prior employer, FMC.

16

Accordingly, because there is solidary liability between FMC on the one hand and Perero and LUBA on the other, every payment of medical expenses made by FMC as of July of 2015, acted to interrupt the three-year prescriptive period applicable to medical expenses owed by Perero and LUBA. Accordingly, we reverse the WCJ's November 17, 2014 judgment insofar as it sustained the exception of prescription and remand the matter for a determination of the medical expenses owed to Mr. Rouly by Perero and LUBA.

## DISPOSITION

Based on the foregoing reasons, we affirm the judgment of the workers' compensation judge finding Eugene Rouly totally and permanently disabled; we reverse the judgment of the workers' compensation judge sustaining the exception of prescription in favor of Perero Companies, Inc., d/b/a DND Landscaping, and LUBA Casualty Insurance Company; and we remand the matter for further proceedings to determine the medical expenses owed to Eugene Rouly by Perero Companies, Inc., d/b/a DND Landscaping, and LUBA Casualty Insurance Company. We assess all costs of this appeal to Perero Companies, Inc., d/b/a DND Landscaping and LUBA Casualty Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**