762 So.2d 1188 (2000)
Nettie Jean MILLICAN
v.
Isaac PONDS, Desselle Funeral Home and Commercial Union Insurance Company
No. 99 CA 1052.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
*1189 Richard G. Creed, Jr., Creed Law Firm, Baton Rouge, Counsel for Plaintiff/Appellee, Nettie Jean Millican.
Nan M. Landry, Lafayette, Counsel for Defendants/Appellants, Isaac Ponds, Desselle Funeral Home and Commercial Union Insurance Company.
Alan L. Schwartzberg, Baton Rouge, Counsel for Plaintiff/Appellee, Nettie Jean Millican.
Before: YELVERTON, THIBODEAUX, and GREMILLION, Judges.[1]
GREMILLION, Judge.
This appeal arises out of an automobile accident in which a vehicle owned by Desselle Funeral Home (DFH) and operated by its employee, Isaac Ponds, struck a vehicle driven by plaintiff, Nettie Millican. Millican subsequently filed suit against Ponds, DFH, and its insurer, Commercial Union Insurance Company, claiming she sustained various injuries as a result of the accident. For the following reasons, we reverse the trial court's ruling granting Millican's Motion for Judgment Notwithstanding the Verdict.

FACTS AND PROCEDURE
On September 15, 1995, while Millican was sitting in her car after a funeral in a cemetery located at 5900 Greenwell *1190 Springs Road in Baton Rouge, an out-of-control DFH hearse driven by Ponds struck the driver's side, front quarter of her car. Millican filed suit and sought compensation for the following injuries: a whiplash of six months duration, a bump on the head, a laceration on her left arm requiring three stitches, and a knee injury. Defendants admitted liability, and a jury trial on the issue of damages resulted in an unanimous verdict of the following awards:

Past, Present and Future Physical Pain and
Suffering: $25,000.00
Past, Present and Future Mental Pain and
Suffering: $ 7,500.00
Permanent Physical Disability: $ 0.00
Loss of Enjoyment of Life: $ 5,000.00
Past and Future Medical Expenses: $ 5,000.00
Past and Future Lost Wages and/or Benefits: $ 0.00

Millican filed a Motion for Judgment Notwithstanding the Verdict (JNOV) or, in the alternative, for New Trial. She argued that no reasonable jury could have concluded that the accident was not the cause of her knee injury and that the jury verdict was tainted by the testimony of Dr. Jack Loupe.
After a hearing on the Motion for JNOV or, alternatively, for a New Trial, the trial court denied the Motion for New Trial, but granted the JNOV. The trial court increased the award for loss of enjoyment of life from $5,000.00 to $17,987.65 and increased the award for past and future medical expenses from $5,000.00 to $14,512.35, thus increasing the jury's award of $42,500.00 to $65,000.00.[2] Defendants appeal asserting: 1) the trial court erred in granting the JNOV, and 2) the original jury award of $42,500.00 was excessive.

APPELLATE REVIEW
La.Code Civ.P. art. 1811 entitled "Motion for judgment notwithstanding the verdict" reads in pertinent part:
A. (2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict ....
C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
. . . .
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.
"A JNOV is a procedurally correct device for raising an unreasonable damage award." Thibodeaux v. Wal-Mart Stores, Inc., 98-0556, p. 2 (La.App. 1 Cir. 4/1/99); 729 So.2d 769, 770, writ denied, 99-1244 (La.6/18/99); 745 So.2d 28. However, a JNOV is proper only when the trial court determines that reasonable minds could not reach a contrary verdict. Grissette v. Thomas, 96-1520 (La.App. 1 Cir. 11/7/97); 704 So.2d 1215. "The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach *1191 different conclusions, not merely when there is a preponderance of evidence for the mover." Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991). The trial court is prohibited from weighing evidence, making credibility determinations, drawing inferences therefrom, or substituting its fact determination for that of the jury. Id. "When a trial court determines a JNOV is warranted because reasonable persons could not differ that the award was abusively low, it must determine the proper amount of damages." Thibodeaux, 729 So.2d at 770. In making its determination, the trial court must render a de novo award based on its independent assessment of damages. Anderson, 583 So.2d at 829; Verret v. Carline, 93-0508 (La.App. 1 Cir. 3/11/94); 634 So.2d 37, writ denied, 94-0842 (La.5/13/94); 637 So.2d 1070. Factual questions should be resolved in favor of the non-moving party. Anderson, 583 So.2d 829.
An appellate court review of a trial court's determination as to whether the granting of a JNOV was proper is done under the same standards that burden the trial court. The supreme court explained in Anderson, 583 So.2d at 832:
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the [same] criteria .... the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the Defendants claim the trial court erred in granting Millican's motion for JNOV. The trial court did not reveal its reasons for increasing the awards for loss of enjoyment of life and medical expenses in either its oral or written reasons for judgment. However, the record reveals that the main issue at trial was the causation of Millican's knee injury. In her memorandum in support of the motion for JNOV, Millican argued that the jury committed legal error. She reasoned that, given the fairly minor nature of her other injuries, the jury must have accepted that her knee injury was a result of the accident in making the general damage and loss of enjoyment awards. As such, Millican claimed that the jury failed to award all her medical expenses and failed to make any award for loss of income or permanent disability. Apparently, the trial court found favor with some portion of this argument, though it did not increase the award for past or future lost wages.
After carefully reviewing the record, we find it replete with evidence which would have allowed reasonable jurors exercising impartial judgment to reach a contrary conclusion. The record revealed that Dr. Henry Dixon, an internist that was treating Millican for coronary artery disease, high blood pressure, chronic renal failure and gout, examined her just three days after the accident. He testified that, though Millican made numerous visits to his office in the time period following the accident, she did not mention any knee discomfort until April 3, 1996, almost six months after the accident. Dr. Dixon also testified that his colleague, Dr. Branda, made note that Millican complained that her knee did not start to "hurt" until three weeks before her April 1996 visit, and that she did not relate her pain to the accident.
On a referral from Dr. Branda, Millican saw orthopedic surgeon Dr. Jack Loupe on April 8, 1996. Dr. Loupe testified that *1192 Millican explained to him that her knee pain started while attending a seminar in New York several weeks before. Dr. Loupe further explained that Millican complained that she began experiencing pain in her right great toe, which over several days spread to her left great toe and left knee. X-rays ordered by Dr. Loupe revealed calcification in her meniscus and minimal spur formulation. His diagnosis was synovitis with suspicion of gout. Dr. Loupe also testified that when he discussed with Millican his conclusion that her knee injury was not a result of her September 1995 automobile accident, she agreed.
An MRI done several days after Millican's visit with Dr. Loupe revealed grade two degeneration of the posterior horn of her medial meniscus. Dr. Loupe attributed this condition to a result of wear and tear on her knee over a period of time. He also felt that had this injury been caused by the accident it would have caused a great deal of pain from its inception and would have caused Millican to have problems walking. When questioned as to whether Dr. Loupe's diagnosis was proper, Dr. Dixon agreed that the condition of Millican's knee was consistent with a finding of wear and tear on a person her age.[3] Thus, for the afore discussed reasons, we find the trial court erred in granting the Motion for JNOV and reverse that ruling.

ASSIGNMENT OF ERROR NUMBER TWO
The Defendants assert in this assignment of error that the jury committed error by awarding $42,500.00 in damages for soft tissue injuries. The trier of fact is afforded a great deal of discretion in fixing general damage awards. La.Civ. Code. art. 2324.1; Hollenbeck v. Oceaneering Int'l, Inc., 96-0377 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, writ denied, 97-0493 (La.4/4/97); 692 So.2d 421. The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id.
Though we find the damage award relatively high, we cannot say that the award in this case is outside the scope of what a reasonable trier of fact could access for the injures sustained by Millican. Millican was violently thrown about the cab of her car and suffered a laceration of her left arm, numerous bruises and abrasions on the left side of her torso and head, recurring headaches, and a whiplash injury from which she endured six months of pain. We will not invade the province of the jury as the finder of fact, and, therefore, find no merit in this assignment of error.

CONCLUSION
For the reasons assigned, we reverse the trial court's award of additional damages subsequent to the JNOV and reinstate the jury's original award. The costs of this appeal are assessed to the plaintiff-appellee, Nettie Millican.
REVERSED.
NOTES
[1] Judges Pro Tempore by special appointment of the Louisiana Supreme Court.
[2] In its oral reasons for judgment the trial court stated, "The court is going to increase the award of the jury in the following respects: the court is going to add to that portion of the judgment showing loss of enjoyment of life. The court is going to add to that the sum of seventeen thousand nine hundred eighty-seven dollars and sixty-five cents ($17,987.65). For past and future medical expenses the court is going to add to that sum of nine thousand five hundred twelve dollars and thirty-five cents ($9,512.35). It is my understanding that these figures should bring the judgment of the jury to the sum of sixty-five thousand dollars ($65,000.00). I will sign a judgment to that effect." Adding these sums to the original judgment increases the award to $70,000.00. However, this issue was not raised on appeal and is made moot by our findings in this appeal.
[3] Millican was sixty-three years old at the time of the office visit.