844 So.2d 1006 (2003)
Gary BARRILLEAUX, Beau Barrilleaux and Luke Barrilleaux
v.
Kylane Shane BARTHELEMY and Plaquemines Parish Government.
No. 2002-CA-1416.
Court of Appeal of Louisiana, Fourth Circuit.
April 2, 2003.
*1007 Philip F. Cossich, Jr., Darren D. Sumich, Cossich, Sumich & Parsiola, L.L.C., Belle Chasse, LA, for Plaintiff/Appellee.
Michael L. Mullin, Assistant Parish Attorney, Belle Chasse, LA, and Philip D. Nizialek, Teresa L. Deford, Rathwell & Nizialek, P.C. The Woodlands, TX, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS Sr., Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
FACTS AND PROCEDURAL HISTORY On July 6, 2001, Gary Barrilleaux and his wife of 26 years, Laurie, were traveling northbound on Louisiana Highway 39 in Plaquemines Parish on their 2000 Harley Davidson motorcycle. Suddenly and without warning or signal, Kylane Shane Barthelemy pulled out from the shoulder of the highway in a pickup truck attempting to make a left-hand U-turn. Mr. Barthelemy failed to check for oncoming traffic and struck the motorcycle ridden by Gary and Laurie as he pulled onto the highway.
The pickup truck was owned by the Plaquemines Parish government and Mr. Barthelemy was in the course and scope of his employment with the Parish when the accident occurred. He had been parked on the shoulder of Highway 39 waiting for the Parish's grass-cutting crews to finish the area.
The collision resulted in severe injuries for the Barrilleauxs. Although both Gary and Laurie were wearing helmets, they each sustained serious injuries. Gary suffered a severe, distal radius fracture to his right wrist requiring an open reduction with an internal fixation using plates and *1008 screws and an external fixation with a halo-type device. He also suffered a dislocated and fractured pelvis, which required an internal fixation with plates and screws. Additionally, the nerves in his left (dominant) hand were injured so badly that it has left several fingers nonfunctional. He had an open wound fracture to the distal radius of his left wrist requiring an internal fixation using plates and screws. Multiple ribs were fractured and his left lung was punctured and it subsequently collapsed, which required a chest tube. His spleen was ruptured. His liver had a hematoma. His sternum was fractured. He also suffered scrotal edema, sacroiliac dislocation, broken toes, cardiac arrhythmia, memory loss and cognitive damage. The resulting psychological trauma included severe depression and post-traumatic stress syndrome.
Laurie suffered injuries even more severe than Gary's, and finally died as a result of the accident. She lay on the highway conscious and suffering, waiting for medical help to arrive, and praying with passersby who tried to give her comfort. Eventually, emergency help arrived and she was transported to Charity Hospital by ambulance where she was pronounced dead sometime later.
The Parish stipulated that the accident was caused solely through the fault of its employee, Mr. Barthelemy. The trial court ruled that, under the stipulated facts, there exist three separate $500,000.00 general damage caps under Louisiana R.S. 13:5106 for each of the plaintiffs' claims: (1) personal injury claim by Gary pursuant to La. Civil Code art. 2315 for the injuries he sustained; (2) personal injury claim pursuant to La. Civil Code art. 2315.1 asserted by Gary and his sons for the personal injuries Laurie sustained prior to her death (i.e., the survival action); and (3) wrongful death claim pursuant to La. Civil Code art. 2315.2 brought by Gary and the sons for the loss they sustained as a result of Laurie's death (wrongful death action).
ANALYSIS
Appellants, Mr. Barthelemy and the Plaquemines Parish Government ("the Parish"), argued in support of its motion for partial summary judgment that under the facts of this case where injuries were sustained at one time in one accident, the relevant statutory cap applied in a per victim manner; thus, there could only be $500,000.00 awarded for Gary's injuries and the same amount awarded for Laurie's injuries and death for a total of $1 million dollars, as opposed to $1,500,000.00 awarded by the trial court.
The Parish bolsters its argument by the following assertions: (1) the history of the statute requires a less expansive interpretation than was given by the trial court; (2) the legislative intent underlying the statute's enactment is to shield government entities from "runaway" verdicts and preserve the public fisc, thus, this intent would be best served by the Parish's statutory interpretation rather than the trial court's ruling; (3) the 1996 amendment is indicative of the legislature's intention to provide only one cap per victim for both personal injuries and subsequent death; and (4) the interpretation afforded the statute by the trial court's ruling would lead to disparate results depending upon whether or not a decedent left behind a statutory wrongful death claimant, and whether or not a fatally injured victim survived before expiring.
The Parish cites Conerly v. State, 97-0871 (La.7/8/98), 714 So.2d 709, which discusses the statutory cap on medical malpractice damages, and asserts that it is analogous to the 13:5106 governmental entity cap. In Conerly, the court held one statutory cap applied to both the survival action and the wrongful death actions *1009 brought by the parents of a girl who died shortly before her fifth birthday from complications caused by malpractice at her birth.
Essentially, the Parish asserts that it is necessary to look to the legislative intent to interpret this statute pursuant to the mandate of the civil code: "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10. Appellant acknowledges, however, that the civil code also provides that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ.Code art. 9.
Conversely, appellees assert that the statute is clear and unambiguous. The statutory cap for governmental subdivisions applies to each claim, not eachvictim. Appellees cite a myriad of cases supporting the proposition that when a law is clear and unambiguous, and such law does not lead to absurd consequences, the law shall be applied as written. See, e.g., ABL Management, Inc. v. Board of Supervisors of Southern Univ., XXXX-XXXX (La.11/28/00), 773 So.2d 131, 135. Additionally, our supreme court has instructed that "words in a statute are to be construed according to their popular and commonly accepted meaning, absent strong reasons to do otherwise." Sales Tax Dist. No. 1 v. Express Boat Co., 500 So.2d 364, 368 (La.1987). Hence, the Barrilleauxs' position is that the statute's meaning is clear and there is no need to inquire into the legislative intent underlying the statute.
Thus, the threshold legal issue before this Court is whether R.S. 13:5106 is clear and unambiguous as drafted, or whether it contains ambiguity such that the legislative intent must be discerned. For the reasons that follow, we find that the statute is unambiguous as written, and therefore, we affirm the trial court's ruling.
Louisiana R.S. 13:5106, in pertinent part, provides as follows:
B. (1) In all suits for personal injury to any one person, the total amount recoverable, including all derivative claims, exclusive of property damages, medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed five hundred thousand dollars.
(2) In all suits for wrongful death of any one person, the total amount recoverable, exclusive of property damages, medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars.
D. (4) "Derivative claims" include but are not limited to claims for survival or loss of consortium.
The plain wording of the statute, i.e., subsection B(1), supports the conclusion that there exists one cap for personal injury damages and that such damages include all derivative claims. "Derivative claims" is a term defined in subsection D(4) to include survival claims. Therefore, based upon the plain reading of the statutory language, Laurie's survival action, i.e., the claim asserted by her surviving husband and sons for Laurie's personal suffering while she lived, is limited to one $500,000.00 cap.
Additionally, the plain language of the statute in subsection B(2) that governs caps on wrongful death supports the conclusion that there exists a separate $500,000.00 cap for wrongful death claims. *1010 Nowhere in the statute is there any language that limits the recovery to one cap per victim, as the Parish contends. The plain reading of the statute provides for one cap on personal injury damages (including survival actions for those personal injury damages) and one cap for wrongful death damages. The trial court's decision, which awarded Laurie's survivors two separate recoveries of $500,000.00 eachone for the personal injuries she suffered prior to her death and the other for the death itselfwas correct.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.