CARTER, C.J.
| aThese consolidated matters arose out of a motor vehicle accident. Defendant, the State of Louisiana through the Department of Transportation and Development (DOTD), appeals regarding the propriety of the trial court’s denial of DOTD’s motion for mistrial after the trial court discharged the twelfth juror and continued the jury trial with eleven jurors over DOTD’s objection. Plaintiff, David Adjep-on-Yamoah, also appeals the trial court’s granting of a judgment notwithstanding the verdict (JNOV) and a reduction of the jury’s damage award in his favor. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On February 26, 2001, Alfred Adjepon-Yamoah (Alfred) lost control of his vehicle in a rainstorm after encountering water flowing over Louisiana Highway 66 (commonly referred to as the “Angola Road”) near its intersection with Pittman Road in West Feliciana Parish. While hydroplaning out of control, Alfred’s car collided with a pickup truck driven by Taffy McCray (Taffy). Sherlyn Cavalier (Sher-lyn) was riding as a guest passenger in Taffy’s vehicle. Alfred died at the scene of the accident, while Taffy and Sherlyn suffered serious injuries.
Taffy and her husband Jesse, and Sher-lyn and her husband Donald, filed a personal injury suit against DOTD for alleged improper design, construction, and maintenance of the drainage system along Angola Road and against Kelly Glass Logging, Inc. (Kelly Glass) and its insurer, State National Insurance Company (State National), for Kelly Glass’s alleged negligent logging operations that had blocked the drainage along Pittman Road, contributing to the overflow of water onto Angola Road. Similarly, Alfred’s son, David Adjepon-Yamoah (David), brought a survival and wrongful death action against DOTD, Kelly Glass, State National, and the Parish of West Feliciana (Parish), alleging the same theories of | pliability. Because both lawsuits arose out of the same accident and involved essentially the same parties and issues, the cases were consolidated for trial.[1]
On July 10, 2007, a nine-day jury and *639 bench trial commenced.[2] A jury of twelve with one alternate was empaneled and sworn. On the third day of trial, one juror was released by the trial court for medical reasons, and the alternate juror , took her place with the consent of all the parties. On the fifth day of trial, July 16, 2007, another juror informed the trial court that her son was very ill. After notifying the parties and questioning the juror in the presence of the parties and on the record, the trial court released the juror for hardship over DOTD’s objection to continuing the trial with only eleven jurors. The trial court orally ruled that the remaining eleven jurors constituted a sufficient number to have a fair trial.
DOTD moved for a mistrial and a stay of the proceedings, which the trial court denied. No other party objected; however, Kelly Glass requested that any verdict rendered by the jury require nine out of eleven concurring votes. The trial court agreed and orally ruled that nine of eleven jurors must concur in the verdict, unless the parties stipulated otherwise. DOTD promptly applied for an expedited supervisory writ to this court and requested a stay of the trial. On July 17, 2007, another panel of this court denied DOTD’s motion to stay and denied the writ, stating, “See Terrance v. The Dow Chemical Co., et al., 2006-1540 (La.6/19/06), 930 So.2d 961, wherein the supreme court granted writs, reversed this court’s grant of a mistrial and reinstated a trial by eleven (11) jurors in a factually close scenario.” Sherlyn Cavalier v. The State of Louisiana, Department of Transportation and Development, 2007-1353 (La.App. 1 Cir. 7/17/07) (unpublished writ action). Thereafter, the trial continued with eleven jurors.
At the conclusion of the trial on July 20, 2007, the jury returned a unanimous verdict finding that Alfred was 0% at fault, DOTD was 80% at fault, and Kelly Glass and State National were 20% at fault in causing the accident. Additionally, the trial court found that the Parish had no fault in causing the accident. Damages were awarded to all the plaintiffs, and three separate judgments (one for the Cavaliers, one for the McCrays, and one for Alfred’s son David) were signed in accordance with the jury verdict on August 2, 2007.
DOTD, Kelly Glass, and State National moved for a JNOV, new trial, and/or re-mittitur, on the grounds that some of the damage awards are excessive. Specifically relevant to this appeal are the jury’s survival and wrongful death awards in favor of David. DOTD, Kelly Glass and State National argued that $200,000.00 awarded to David for Alfred’s mental pain and suffering prior to his death, and $400,000.00 awarded to David for the loss of financial support from Alfred, was excessive and not supported by the evidence. After a hearing on the post-trial motions, the trial court granted a JNOV in favor of DOTD, Kelly Glass and State National, reducing the jury’s survival damages award in favor of David for Alfred’s mental pain and suffering prior to his death from $200,000.00 to $50,000.00, and reducing the jury’s wrongful death damages award to David for his loss of Alfred’s financial support from $400,000.00 to $25,000.00.[3] Judgment was signed accordingly on October 25, 2007.
DOTD filed a suspensive appeal from all of the judgments, arguing that the jury *640 verdict was a legal nullity because the trial court erred in denying DOTD’s motion for mistrial and continuing the trial with only eleven jurors over DOTD’s ^objection.[4] David filed a devolutive appeal, arguing that the trial court erred: (1) in not allowing the jury to make a survival action award for the physical pain and suffering endured by Alfred prior to his death; (2) in reducing the jury’s survival award to David for Alfred’s mental pain and suffering prior to his death; and (3) in reducing the jury’s wrongful death award to David for his loss of financial support from Alfred. We will consider each appeal separately.

DOTD’S APPEAL REGARDING THE ELEVEN-MEMBER JURY

DOTD’s appeal raises three assignments of error concerning one issue: whether the trial court erred in proceeding with eleven jurors over DOTD’s objection. The other parties all argue that the “law of the ease” doctrine precludes re-litigation of the trial court’s denial of DOTD’s motion for mistrial because this court already denied DOTD’s supervisory writ application on this issue, allowing the case to proceed with eleven jurors.[6]
Application of the “law of the case” principle to decisions made on supervisory writs is discretionary. Therefore, any prior “determination” in a request for a supervisory writ is not necessarily binding on a subsequent appeal. Diamond B Const. Co., Inc. v. Department of Transp. and Development, 02-0573 (La.App. 1 Cir. 2/14/03), 845 So.2d 429, 434. Generally, the denial of supervisory writs does not bar a different conclusion or reconsideration of the same issue argued in the writ application when an appeal is taken from a final judgment. Levine v. First Nat. Bank of Commerce, 06-394 (La.12/15/06), 948 So.2d 1051, 1056 n. 4; East Baton Rouge Parish School Bd. v. Wilson, 08-0536 (La.App. 1 Cir. 6/6/08), 992 So.2d 537, 543; Diamond B Construction, 845 So.2d at 434. Likewise, where a prior disposition is clearly erroneous and will create a grave |-Injustice, it should be reconsidered. Louisiana Land and Exploration Co. v. Verdin, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997).
In considering DOTD’s arguments, we note that DOTD does not raise anything different on appeal from that which was previously presented to the trial court on the original motion for mistrial and again to this court in its writ application. In fact, not only is the argument the same, but the citation to articles, statutes, and case law are indistinguishable. DOTD maintains that when the trial court released the twelfth juror without a stipulation by DOTD to proceed with eleven jurors and over DOTD’s objection, the jury no longer complied with the requirements of the Louisiana Code of Civil Procedure and the jurisprudence, thereby rendering the jury’s verdict a legal nullity.
When we denied DOTD’s writ application, we directed the parties and the trial court to a factually-similar scenario wherein the supreme court granted writs and reversed this court’s grant of a mistrial, reinstating a trial by eleven jurors in Terrance v. Dow Chemical Co., 06-1540 (La.6/19/06), 930 So.2d 961. Although the *641 supreme court did not elaborate in a full opinion as to the reasons for its reversal in Terrance, the case represents a definitive ruling by the supreme court holding that an eleven-member jury was appropriate when a juror was discharged for a medical hardship in the middle of a trial, with no available alternate juror and with no stipulation by the parties to proceed with less than twelve jurors pursuant to LSA-C.C.P. art. 1761(B). See Terrance v. Dow Chemical Co., 06-2234 (La.App. 1 Cir. 9/14/07), 971 So.2d 1058, 1063, writ denied, 07-2042 (La.12/14/07), 970 So.2d 534. As an intermediate appellate court, we are bound to follow the decisions of the supreme court when a question is not specifically regulated by ^statute and the supreme court has made the only available definitive ruling and the last expression of law as to the issue. See Pelican State Associates, Inc. v. Winder, 253 La. 697, 219 So.2d 500, 503 (1969); Heinick v. Jefferson Parish School Bd., 97-579 (La.App. 5 Cir. 10/28/97), 701 So.2d 1047, 1051, writ denied, 97-2961 (La.2/6/98), 709 So.2d 739.
While we find that our prior ruling denying writs under the authority of Terrance was correct, we will elaborate on the reasons for maintaining our previous holding because the issue deals with the fundamental right to a jury. See Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1 Cir.), writs denied, 605 So.2d 1099, 1100 (La.1992). Initially, we note that the right to a civil jury trial in a Louisiana court is a statutory as opposed to constitutional right.[6] See LSA-C.C.P. arts. 1731-1814; Riddle v. Bickford, 00-2408 (La.5/15/01), 785 So.2d 795, 799. Louisiana courts have recognized that the right to a civil jury trial is a basic right that should be protected in the absence of specific authority for its denial. Martello v. Circle K Stores, Inc., 04-0139 (La.App. 1 Cir. 2/11/05), 906 So.2d 547, 549, writ denied, 05-0649 (La.4/29/05), 901 So.2d 1074. DOTD maintains that the denial of a timely requested twelve-member jury is tantamount to a denial of a jury trial. For the following, reasons, we find no merit to DOTD’s assertion.
DOTD strenuously argues that LSA-C.C.P. art. 1761 clearly regulates this situation and statutorily requires twelve jurors in a civil jury trial unless the parties stipulate otherwise. Louisiana Code of Civil Procedure article 1761 provides as follows:
| ()A. In cases to be tried by jury, twelve jurors summoned in accordance with law shall be chosen by lot to try the issues specified unless the parties stipulate that the case shall be tried by six jurors. The method of calling and drawing by lot shall be at the discretion of the court.
B. The parties may stipulate that if one or more jurors die or become disqualified the remaining jurors shall try the issues specified.
(Emphasis added.)
DOTD maintains that LSA-C.C.P. art. 1761 vests no discretion with the trial court in determining the proper number of jurors, and since DOTD objected and did not stipulate to proceeding with less than twelve jurors, the trial court erred in denying DOTD’s motion for mistrial. However, we find that the term “may” in LSA- *642 C.C.P. art. 1761(B) clearly does not contemplate a situation where a stipulation by the parties is required before a trial may proceed with less than twelve jurors. Twelve jurors, plus one alternate juror, were chosen as mandated by LSA-C.C.P. art. 1761(A). DOTD’s refusal to stipulate that the case could be tried by the remaining jurors when the trial court discharged the twelfth juror did not limit the trial court’s discretion to proceed with the remaining eleven jurors.
It is well established that a motion for mistrial in a civil case should be granted under the following circumstances: (1) when the trial court determines that it is impossible to reach a proper judgment because of some error or irregularity; and (2) where no other remedy would provide relief to the moving party. Estate of Cristadoro ex rel. Jones v. Gold-Kist, Inc., 01-0026 (La.App. 4 Cir. 1/23/02), 819 So.2d 1034, 1049, writ denied, 02-1325 (La.9/13/02), 824 So.2d 1171. A trial court has great discretion in determining whether to grant a mistrial, since mistrials are not a matter of right. Id. Furthermore, the trial court has vast discretion in the manner in which proceedings are conducted, and it is only upon a showing of a gross abuse of discretion that appellate courts will intervene. Lavespere v. Lavespere, 07-2171 (La.App. 1 Cir. 5/2/08), 991 So.2d 81, 84; Pino v. Gauthier, 633 So.2d 638, 648 (La.App. 1 Cir.1993), writs denied, 94-0243, 94-0260 (La.3/18/94), 634 So.2d 858, 859.
We find that the trial court acted in a reasonably prudent manner in discharging the twelfth juror for hardship in this case. The release of the juror occurred on the fifth day of the nine-day trial when the juror informed the trial court that one of her children was very ill. The trial court questioned the juror in the presence of the parties and on the record before ruling that the juror would not be able to properly listen to and consider the evidence because of her concern over the health of her child. The trial court heard and considered comments on the six-year length of time that the consolidated cases had been pending prior to trial, and also considered the tremendous burden and long distance that David and his uncle had traveled (from Ghana in West Africa) to attend the trial before orally ruling that eleven jurors were a sufficient number to have a fair trial. All of the parties except DOTD agreed that eleven jurors were sufficient, with at least nine concurring to render a verdict. The trial court should not be forced to grant a mistrial because one party refuses to stipulate to proceeding with eleven jurors, especially when the trial court has reasonably evaluated the chances of a fair trial and verdict with the remaining eleven jurors. Therefore, we find no abuse of discretion on the part of the trial court’s ruling that an eleven-member jury was sufficient for a fair trial in this case.
DOTD also contends that the trial court had no authority to decide unilaterally that nine of the eleven remaining jurors must concur in order to render a verdict, because there was no stipulation by the parties pursuant to LSA-C.C.P. art. 1797. However, we find that because the jury’s verdict was unanimously rendered by the eleven remaining jurors, DOTD cannot prove that it suffered any prejudice by the release of the twelfth juror. See Simoneaux v. Amoco Production Company, 02-1050 (La.App. 1 Cir. 9/26/03), 860 So.2d 560, 566, writ denied, 04-0001 (La.3/26/04), 871 So.2d 348. Only nine jurors must concur to render a verdict in a jury trial by twelve, unless the parties stipulate otherwise. No stipulation was necessary in this case because the parties did not first stipulate that the remaining *643 jurors should try the case if one or more jurors became disqualified. See LSA-C.C.P. art. 1797.[7] Therefore, the trial court did not abuse its great discretion when it ruled that the verdict must be rendered by at least nine out of the eleven jurors.
We also note that the articles in the Louisiana Code of Civil Procedure pertaining to jury trials closely follow the Federal Rules of Civil Procedure Rule 48, which allows for a stipulation for a jury less than twelve. See LSA-C.C.P. art. 1761, 2003 Official Revision Comments (c). See also LSA-C.C.P. art. 1797, 2003 Official Revision Comments stating that under the Federal Rules of Civil Procedure, unanimity is required unless the parties stipulate to the contrary. Federal Rules of Civil Procedure Rule 47(c) (which is referenced in Rule 48) states that “[djuring trial or deliberation, the court may excuse a juror for good cause.” (Emphasis added.) The Advisory Committee Notes following the text of Fed. Rules Civ. Proc. Rule 47 state that subdivision (c) “makes it clear that the court may in appropriate circumstances excuse a juror during the jury deliberations without causing a mistrial. Sickness, family emergency or juror misconduct that l^might occasion a mistrial are examples of appropriate grounds for excusing a juror.” In this case, the trial court was faced with an appropriate circumstance for excusing the twelfth juror. A mistrial does not automatically follow. DOTD also argues that the dismissed juror could have possibly persuaded other jurors to reach a different verdict, contending that it is impossible to know the true impact of one juror.[8] However, given the unanimous verdict with two votes over the required nine, we find no merit to this argument.
One of the most significant points on this issue is the trial court’s great discretionary power under LSA-C.C.P. art. 1631(A) to control the proceedings. Louisiana Code of Civil Procedure art. 1631(A) provides:
The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
As we have already discussed, the trial court decided in its discretion to remove the juror for good cause due to the juror’s sick-child hardship. The trial court carefully questioned the juror in the presence of the parties and contemplated the burden on the parties of having waited six years for trial. The trial court also considered that some witnesses had traveled great distances for the trial and that the trial was over halfway finished. The trial court made a record of its decision to remove the juror and cited on the record its reasons for the juror’s discharge and its reasons for continuing with the remaining eleven jurors. We find the trial court’s *644 action falls clearly within its great discretion to control the proceedings at trial. See Hamilton v. Winder, 06-0994 (La.6/16/06), 931 So.2d 358, 359. Accordingly, we find no |ismerit to DOTD’s assignments of error and we maintain our previous holding that the eleven-member jury was appropriate in this instance.

DAVID’S APPEAL REGARDING THE SURVIVAL AND WRONGFUL DEATH ACTIONS AND THE JNOV

Alfred’s surviving son, David, brought survival and wrongful death actions after Alfred died in the accident. The jury rendered a verdict in favor of David, awarding $200,000.00 in the survival action for Alfred’s mental pain and suffering prior to his death and $400,000.00 in the wrongful death action for David’s loss of financial support from Alfred.[9] Thereafter, the trial court granted a JNOV in favor of DOTD and Kelly Glass, and reduced the survival action damages to $50,000.00 and the wrongful death loss-of-support damages to $25,000.00. On appeal, David argues that the trial court erred in reducing the awards and in not allowing the jury to consider an award for Alfred’s physical pain and suffering he experienced prior to his death as part of the survival action. DOTD counters that the JNOV and reductions were proper and further justified so that David’s award would not exceed the statutory cap of $500,000.00 provided in LSA-R.S. 13:5106(B).
A JNOV is proper only when the trial court determines that reasonable minds could not reach a contrary verdict. Millican v. Ponds, 99-1052 (La.App. 1 Cir. 6/23/00), 762 So.2d 1188, 1190. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable jurors could not find otherwise. Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84, 89. The trial court is prohibited from weighing evidence, making credibility determinations, drawing inferences, or substituting its fact determinations for that of the jury. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991); Millican, 762 So.2d at 1191. When a trial court determines a JNOV is warranted because reasonable persons could not differ in deciding that an award was abusively high or low, it must determine the proper amount of damages. Thibodeaux v. Wal-Mart Stores, Inc., 98-0556 (La.App. 1 Cir. 4/1/99), 729 So.2d 769, 770, writ denied, 99-1244 (La.6/18/99), 745 So.2d 28; Anderson, 583 So.2d at 833.
An appellate court’s review of a trial court’s determination as to whether the granting of a JNOV was proper is done under the same standards that govern the trial court’s review. Millican, 762 So.2d at 1191. Thus, we must first determine whether the facts and inferences point so strongly and overwhelmingly in favor of DOTD and Kelly Glass that reasonable men could not arrive at a contrary verdict. Stated simply, we decide whether the jury’s verdict is one which reasonable people could not have rendered; if reasonable persons could have arrived at the same verdict given the evidence presented to the jury, then a JNOV is improper. See Broussard v. Stack, 95-2508 (LaApp. 1 Cir. 9/27/96), 680 So.2d 771, 779-780; Lilly v. Allstate Ins. Co., 577 So.2d 80, 83 (La.App. 1 Cir.1990), writ denied, 578 So.2d 914 (La.1991).
*645 Thus, our initial inquiry in this case is: does the evidence overwhelmingly support DOTD and Kelly Glass’s contention that the awards to David for Alfred’s mental pain and suffering prior to his death and David’s loss of financial support were abusively high? If so, then the trial court was correct in granting the JNOV and we must then conduct a review of the damage awards based on the trial court’s independent assessment of the damages. Davis, 774 So.2d at 89; Wingfield v. State ex rel. Dept. of Transp. and Development, 01-2668 (La.App. 1 Cir. 11/8/02), 835 So.2d 785, 809, writs denied, 03-0313, 03-0339, 03-0349 (La.5/30/03), 845 So.2d 1059, 1060, cert. denied, 540 U.S. 950, 124 S.Ct. 419, 157 L.Ed.2d 282 (2003). If, however, reasonable men in the exercise of impartial |! ¿judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. Anderson, 583 So.2d at 834. For simplicity, we will examine each of the damage awards separately to determine if the trial court properly granted the JNOV.

Survival Damages

Survival damages may be awarded for the pre-death mental and physical pain and suffering of the deceased. In determining survival damages the factfinder should consider the severity and duration of any pain or any pre-impact fear experienced by the deceased, and any other damages sustained by the deceased up to the moment of death. Leary v. State Farm Mutual Auto. Ins. Co., 07-1184 (La.App. 3 Cir. 3/5/08), 978 So.2d 1094, 1098, writ denied, 08-0727 (La.5/30/08), 983 So.2d 900; see also Temple v. Liberty Mut. Ins. Co., 330 So.2d 891, 893-894 (La.1976). “Survival damages are properly awarded if there is even a scintilla of evidence of pain or suffering on the part of the decedent, and fright, fear, or mental anguish during an ordeal leading to the death is compen-sable.” Leary, 978 So.2d at 1098 (quoting Patrick v. Employers Mut. Cas. Co., 99-94 (La.App. 3 Cir. 8/11/99), 745 So.2d 641, 652, writ denied, 99-2661 (La.11/24/99), 750 So.2d 987).
A survival action permits recovery only for damages actually suffered by the deceased from the time of injury to the moment of death. Etcher v. Neumann, 00-2282 (La.App. 1 Cir. 12/28/01), 806 So.2d 826, 840, writ denied, 02-0905 (La.5/31/02), 817 So.2d 105; Samuel v. Baton Rouge General Medical Center, 99-1148 (La.App. 1 Cir. 10/2/00), 798 So.2d 126, 129. Where there is no indication that a decedent consciously suffered, an award of pre-death physical pain and suffering should be denied. Id.; Pierre v. Lallie Kemp Charity Hosp., 515 So.2d 614, 619 (La.App. 1 Cir.), writ denied, 515 So.2d 1111 (La.1987). The question |1fiof whether the decedent actually consciously suffered is a factual issue, governed by the manifest error-clearly wrong standard. Etcher, 806 So.2d at 840.
The testimony at trial revealed that Alfred almost instantaneously died at the scene of the accident. Dr. Ernest Lykissa, an expert in forensic toxicology, testified that there was no exact indication of what Alfred suffered upon impact and during the short transition from life to death, but Alfred “probably gasped three, four times and died” after the “original big pain” from the initial blow where he sustained multiple massive and fatal injuries. Dr. Alfredo Suarez, an expert pathologist who performed the autopsy on Albert, testified that Alfred’s death was immediate and occurred within a few seconds of the impact. Alfred suffered a brain injury, a ruptured heart, a completely lacerated pulmonary artery, and a ruptured aorta, among other injuries. Dr. Suarez opined that there was no chance of survival with these types of massive injuries and Alfred *646 would have lost consciousness and “died right on the spot” from bleeding to death. Dr. Suarez also testified that because .of the ruptured heart that caused an almost immediate death, “it’s hard to believe that [Alfred] really suffered that much.” Additionally, Dr. Alfred Gould, the Parish Coroner who examined Alfred’s body and ordered the autopsy, testified that death would have occurred “rather quickly at the scene of the accident” due to the ruptured heart that caused Alfred to bleed to death.[10] None of the testimony revealed that Alfred consciously suffered before he died. Each witness testified that Alfred’s death was almost instantaneous. Accordingly, because there was no evidence that Alfred suffered any conscious physical pain and suffering, uttered any sounds, made any movements, or was sensitive to and aware of pain, between the time of impact and during the few seconds before he |17died at the scene, we find no error in the trial court’s decision to not allow the question of Alfred’s physical pain and suffering to be submitted to the jury. Cf. Temple, 330 So.2d at 893-894.
The physical evidence at the scene of the accident supported a finding that Alfred probably would have been fearful when he realized his precarious position when his car began to hydroplane out of control prior to the point of impact. Mr. Vernon Tekell, Jr., an expert in accident reconstruction, testified that when a vehicle hydroplanes, it is like sliding on ice and the driver has no control. Additionally, Mr. John Thomas Bates, an expert in civil engineering specializing in accident reconstruction, testified that Alfred’s car was also rotating as it hydroplaned out of control. Taffy and Sherlyn’s testimony confirmed that this occurred, because they both observed Alfred’s car rotating counter-clockwise as it slid across the center line and approached the point of impact with their vehicle. Mr. Bates further testified that Alfred had no braking control and no steering control, and that “it doesn’t matter what he tries to do ... he has no control when he is in the hydroplaning area.”
While we believe that Alfred would have been frightfully aware that he was in a very dangerous situation, we agree with the trial court that the jury’s award of $200,000.00 for the mental pain and suffering Alfred experienced immediately prior to his death is excessive under the facts of this record. It is possible that the jury may have been affected by the severity of Alfred’s injuries and tragic death. While an award for pre-impact fear is compensa-ble, the evidence was speculative regarding the extent to which Alfred actually realized he was about to die or suffer serious bodily injury. Therefore, we agree with the trial court that the jury’s $200,000.00 award was one which reasonable persons could not have made after listening to the evidence presented. Thus, we find no error in the trial court’s grant hsof the JNOV as to the survival damages. In reviewing the trial court’s reduction of the award to $50,000.00, we are mindful that we may disturb the award only after an analysis of the facts demonstrates that the trial court abused its “much discretion” in granting the award. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Pino v. Gauthier, 633 So.2d at 656. After a thorough review of the record, we conclude the trial court did not abuse its discretion in awarding survival damages to David in the amount of $50,000.00 for Alfred’s mental pain and suffering prior to his death. *647 Thus, we need not resort to a review of prior cases. Id. Accordingly, we affirm that portion of the trial court’s judgment relating to the $50,000.00 survival damage award to David for Alfred’s pre-death mental pain and suffering.

Wrongful Death Damages

Wrongful death claims do not arise until the victim dies and they are meant to compensate the designated survivors for their loss of the decedent. LSA-C.C. art. 2315.2. The elements of the award for wrongful death include loss of love, affection, companionship, support, and funeral expenses. Wingfield, 835 So.2d at 808. The only wrongful death award that is challenged in this appeal involves the $400,000.00 awarded by the jury for David’s loss of financial support from Albert. The trial court granted a JNOV as to this award and reduced the amount to $25,000.00. David argues that the reduction was in error.
While this case involves a challenging factual scenario because Alfred lived and worked in Louisiana, whereas his son David lived in West Africa with Alfred’s wife, we find clear evidence in the record that Alfred provided some financial support for David. Alfred’s brother, Kenneth Adjepon-Yamoah (Kenneth), testified that Alfred left Ghana in West Africa when David was three [19years old, in order to pursue a master’s degree and to eventually enter into a doctoral program in Louisiana. At the time of his death, Alfred had not completed his doctoral degree and was no longer attending classes. Kenneth stated that it was normal for people in Ghana to leave their country to pursue higher education because of the limited facilities in West Africa. The record contains copies of letters mailed from Alfred to David over the years while Alfred was gone. The letters and Kenneth’s testimony revealed that Alfred emotionally and financially supported David by sporadically sending money, gifts, and loving advice to David from the United States. David was fourteen years old when Alfred died, and it had been approximately four years since they had last seen each other. Phone calls and mail were their primary means of contact. Both David and his uncle (Kenneth) testified that Kenneth has helped financially support David since Alfred’s death. At the time of trial, David was attending a university in Ghana. David testified that he hoped to be able to earn a master’s degree and eventually obtain a Ph.D. in economics. He stated that during his last phone conversation with Alfred, they had talked about the possibility of David coming to the United States for further education after he graduated from the university in Ghana. David testified about missing his father’s encouragement, support, and mentoring.
In their motions for JNOV, DOTD and Kelly Glass and State National argued that the evidence did not support the jury’s award of $400,000.00 for loss of financial support. The trial court agreed, granted the JNOV, and reduced the loss of support award to $25,000.00. After a thorough review of the record, we conclude that reasonable men in the exercise of impartial judgment could not differ as to the fact that the jury’s award for loss of financial support was abusively high. See Davis, 774 So.2d at 89; Thibodeaux, 729 So.2d at 771. The record does not reflect a specific amount for Alfred’s income prior to his death; however, income |j»nis not the only factor in determining loss of support. Recovery for loss of support includes all the financial contributions that the decedent would have made to his dependents had he lived. Further, a decedent’s child is entitled to recover the monetary value of services the decedent provided and would have continued to provide but for his wrongful death. These services include the nurture, training, education, and guid- *648 anee a child would have received had his parent not been killed. Strawder v. Zapata Haynie Corp., 94-453 (La.App. 3 Cir. 11/2/94), 649 So.2d 554, 559. Considering the testimony of David and Kenneth, as well as the letters between Alfred and David, we find the record clearly supports a loving relationship between father and son, although they were not living together. The record also discloses that Alfred sporadically sent indeterminate financial support and gifts to David. It is difficult to place a monetary value on the nurture, training, guidance, education, and financial assistance that a parent provides for a child. However, based on the evidence in the record, we find no abuse of the trial court’s great discretion in reducing the jury’s $400,000.00 award to $25,000.00 for David’s loss of financial support. See Youn, 623 So.2d at 1260; Anderson, 583 So.2d at 834. Therefore, we affirm that portion of the trial court’s judgment awarding $25,000.00 to David for his loss of financial support resulting from Alfred’s wrongful death.[11]
1 ⅞1 CONCLUSION
For the foregoing reasons, we affirm the judgments appealed in all respects. Costs of this appeal in the amount of $13,334.00 are assessed to defendant, the State of Louisiana through the Department of Transportation and Development.
AFFIRMED.

. Other parties were named and originally involved in the proceedings, but only those listed actually participated at trial and are relevant to these consolidated appeals.

. A bifurcated trial was held where the claims against DOTD, Kelly Glass, and State National were tried by jury and the claims against the Parish received a bench trial pursuant to LSA-R.S. 13:5105.

. The trial court also made other rulings that are not pertinent to this appeal.

. Kelly Glass and State National did not appeal.

. Under Louisiana Revised Statute 13:5105(A), a suit against the state or a state agency may be tried by a jury only if the state, its agency, or the plaintiff makes a timely demand for a jury trial. The right to a trial by jury is recognized in all cases, except as limited by Article 1732 of the Louisiana Code of Civil Procedure. LSA-C.C.P. art. 1731(A). In this case, DOTD timely requested a jury trial; therefore, DOTD’s right to a jury trial is not at issue.

. Louisiana Code of Civil Procedure article 1797 provides in pertinent part:
B. If trial is by a jury of twelve, nine of the jurors must concur to render a verdict unless the parties stipulate otherwise.
C. If the parties have stipulated pursuant to Article 1761(B) that the remaining jurors shall try the issues specified if members of the jury die or become disqualified, they also shall stipulate as to the number of jurors who must concur to render a verdict.
(Emphasis added.)

. DOTD cites out-of-state jurisprudence for the proposition that it was entitled to the conclusions of all twelve jurors during the jury's deliberations since there was no waiver or stipulation to proceed with less than twelve jurors. However, each of the cases cited are distinguishable because they involve states that have a constitutional basis for a twelve-person jury that was implemented by statutory mandate. As previously discussed, Louisiana’s right to a civil jury trial is not constitutionally based. See Riddle 785 So.2d at 799.

. The jury also awarded wrongful death damages of $250,000.00 for David's mental pain and suffering, $250,000.00 for his loss of Alfred's love and affection, and $3,000.00 for funeral expenses; however, none of those awards were at issue in the motion for JNOV or in this appeal.

. Dr. Gould testified that he generally indicates the time between the injury and death is four minutes, meaning “instantaneous” death.

. We also find that the total amounts awarded to David for the survival and wrongful death damages do not violate the $500,000.00 statutory cap on damages established by LSA-R.S. 13:5106, taking into account the separate caps for the survival and wrongful death claims and DOTD’s 80% apportionment of fault. See O’Connor v. Litchfield, 03-0397 (La.App. 1 Cir. 12/31/03), 864 So.2d 234, 246; Barrilleaux v. Barthelemy, 02-1416 (La.App. 4 Cir. 4/2/03), 844 So.2d 1006, 1010, writ denied, 03-1254 (La.9/5/03), 852 So.2d 1040.